1   Jennifer S. Romano (State Bar No. 195953)
       JRomano@Crowell.com
2   Andrew Holmer (State Bar No. 268864)
       AHolmer@Crowell.com
3   CROWELL & MORING LLP
    515 South Flower Street, 40th Floor
4   Los Angeles, CA 90071
    Telephone: 213.622.4750
5   Facsimile: 213.622.2690

6   Attorneys for Defendant
    UNITED BEHAVIORAL HEALTH
7

8                    UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10                   SAN FRANCISCO DIVISION

11

12  BARBARA BEACH, on her own behalf and on       Case No. 3:21-cv-08612-RS
    behalf of her minor daughter and all others
13  similarly situated, et al.,                   **DEFENDANT UNITED BEHAVIORAL
                                                  HEALTH'S NOTICE OF MOTION
14                Plaintiffs,                      AND MOTION TO DISMISS
                                                  PURSUANT TO F.R.C.P. 12(b)(6) OR,
15         v.                                      IN THE ALTERNATIVE, TO STRIKE
                                                  PURSUANT TO F.R.C.P. 12(f);
16  UNITED BEHAVIORAL HEALTH,                      MEMORANDUM OF POINTS AND
                                                  AUTHORITIES IN SUPPORT
17                Defendant.                       THEREOF**

18

19                                                Date:   February 6, 2025
                                                  Time:  1:30 p.m.
20                                                Courtroom: 3, 17th Floor
                                                  Judge:  Hon. Richard Seeborg
21

22

23

24

25

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

**NOTICE OF MOTION AND MOTION TO DISMISS**

TO THE CLERK OF THE COURT, ALL PARTIES, AND ALL COUNSEL OF

RECORD: PLEASE TAKE NOTICE that on February 6, 2025 at 1:30 p.m., or as soon as counsel

may be heard after that date, in the United States District Court, Northern District of California,

San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California,

Courtroom 3, 17th Floor, before the Honorable Richard Seeborg, Defendant United Behavioral

Health ("UBH") will and hereby does move this Court for an order dismissing Plaintiffs'

Amended Complaint.

**STATEMENT OF RELIEF SOUGHT**

Under Federal Rule of Civil Procedure 12(b)(6), UBH moves this Court for an order

dismissing Plaintiffs' Amended Complaint because Plaintiffs have not alleged any viable cause of

action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§

1132(a)(1)(B) or (a)(3).

Under Federal Rules of Civil Procedure 12(b)(6) and 12(f), UBH further moves this Court

for an order dismissing or, in the alternative, striking paragraphs H and I of the prayer for relief in

Plaintiffs' Amended Complaint with prejudice because Plaintiffs have not alleged a viable cause

of action under ERISA sufficient to seek claim reprocessing.

**STATEMENT OF ISSUES TO BE DECIDED**

(1) Whether Count I of Plaintiffs' Amended Complaint should be dismissed under Federal

Rule of Civil Procedure 12(b)(6) because Plaintiffs fail to adequately allege any viable

cause of action to support their claim for "Breach of Fiduciary Duty" under ERISA, 29

U.S.C. § 1104(a).

(2) Whether Count II of Plaintiffs' Amended Complaint should be dismissed under

Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs fail to adequately allege

any viable cause of action to support their claim for "Arbitrary and Capricious Denial

of Benefits Pursuant to Excessively Restrictive Guidelines" under ERISA, 29 U.S.C.

§§ 1132(a)(1)(B) or (a)(3).

(3) Whether Count III of Plaintiffs' Amended Complaint should be dismissed under

1    Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs fail to adequately allege

2    any viable cause of action to support their claim for "Arbitrary and Capricious Denial

3    of Benefits for All Services Received in Residential Treatment on a Bundled Basis"

4    under ERISA, 29 U.S.C. §§ 1132(a)(1)(B) or (a)(3).

5    (4) Whether Count IV of Plaintiffs' Amended Complaint should be dismissed under

6    Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs fail to adequately allege

7    any viable cause of action to support their claim for "Failure to Establish and Follow

8    Reasonable Claims Procedures" under ERISA, 29 U.S.C. §§ 1132(a)(3) or 1133.

9    (5) Whether paragraphs H and I of the prayer for relief in Plaintiffs' Amended Complaint

10    should be dismissed or stricken under Federal Rule of Civil Procedure 12(b)(6) or

11    12(f), respectively, because Plaintiffs fail to allege the requirements for claim

12    reprocessing under ERISA, 29 U.S.C. § 1132(a)(1)(B), and because claim

13    reprocessing is not an available remedy under 29 U.S.C. § 1132(a)(3) as a matter of

14    law, and accordingly, Plaintiffs have not alleged a viable cause of action under ERISA

15    sufficient to seek claim reprocessing as a remedy.

16    This motion is based on this Notice of Motion, the accompanying Memorandum of Points

17 and Authorities, the pleadings on file in this matter, and on any additional argument or evidence

18 as the Court may permit.

19

20 Dated: December 19, 2024                     CROWELL & MORING LLP

21

22                                             By: /s/ *Jennifer S. Romano*
                                               _____
                                               Jennifer S. Romano
23                                             Andrew Holmer
                                               Attorneys for Defendant
24                                             UNITED BEHAVIORAL HEALTH

25

26

27

28

1

**TABLE OF CONTENTS**

2
**Page**

3

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

4
    I.     INTRODUCTION ................................................................................................... 1

5
    II.    RELEVANT PLEADINGS ..................................................................................... 2

        A.    Plaintiffs Are Beneficiaries Of ERISA-Governed Health Plans. ............... 2

6
        B.    UBH Developed And Used Plan Coverage And Reimbursement

7
               Guidelines. ................................................................................................. 3

            1.    LOCGs ............................................................................................ 3

8
            2.    Facility-Based Reimbursement Policy. ........................................... 4

9
            3.    Claim Denial Policy ........................................................................ 4

10
        C.    Plaintiffs Allege That UBH Denied Their Requests For Coverage
            Of Residential Treatment Services. ............................................................ 4

11
        D.    Plaintiffs Assert Four Causes of Action on Behalf of Two Putative
            Classes, Each with a "Reprocessing" Subclass. ........................................ 6

12
    III.   THE *WIT* DECISION ............................................................................................. 9

13
    IV.   PROCEDURAL BACKGROUND ........................................................................ 12

    V.    LEGAL STANDARD .......................................................................................... 13

14
    VI.   ARGUMENT ........................................................................................................ 14

15
        A.    *Wit* Requires Dismissal Of Plaintiffs' Guideline Denial Claims. .............. 14

16
            1.    Plaintiffs' Guideline Denial Benefits Claim (Count II)
               Should Be Dismissed Because Plaintiffs Do Not Allege

17
               Causation and Harm. ..................................................................... 14

18
            2.    Plaintiffs' Breach Of Fiduciary Duty Claim (Count I) Based
               On Their Guideline Denial Theory Should Be Dismissed

19
               Because Plaintiffs Do Not Allege Causation and Harm. ............... 17

        B.    *Wit* Requires Dismissal Of Plaintiffs' Bundled Denial Claims. ............... 19

20
            1.    The Bundled Denial of Benefits Claim (Count III) Should
               Be Dismissed .................................................................................. 20

21
                a.    Plaintiffs Do Not Allege Any Obligation Under
                   Their Plans Or ERISA To Authorize Or Pay Claims

22
                   On An "Unbundled" Basis .................................................. 20

23
                b.    Plaintiffs Do Not Allege Any Prejudice Flowing
                   From UBH's Purported Failure To Authorize

24
                   Coverage For Services Plaintiffs Did Not Request. ......... 21

25
            2.    The Breach Of Fiduciary Duty Claim (Count I) Based on
               Plaintiffs' Bundled Denial Theory Should Be Dismissed. ........... 23

26
            3.    Plaintiffs' Adequate Notice Claim (Count IV) Should Be
               Dismissed Because Plaintiffs Do Not Allege that the

27
               Facility-Based Reimbursement Policy Applied to Them. ............. 23

28

Crowell
& Moring LLP
Attorneys at Law

**TABLE OF CONTENTS**
(continued)

<b>Page</b>

C.    In The Alternative, Plaintiffs' Prayers For Claim Reprocessing
Should Be Dismissed Or Stricken. ..........................................................24

VII.    CONCLUSION .................................................................................................25

UBH'S MOT. TO DISMISS AM. COMPL.;
CASE NO. 3:21-CV-08612-RS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABC Servs. Grp., Inc. v. Aetna Health & Life Ins. Co.*,
   No. 22-55631, 2023 WL 6532648 (9th Cir. Oct. 6, 2023) ..................................................... 20

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
   99 F. Supp. 3d 1110 (C.D. Cal. 2015) .................................................................................. 21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................. 13

*Black & Decker Disability Plan v. Nord*,
   538 U.S. 822 (2003) ........................................................................................................ 3, 19

*Condry v. UnitedHealth Grp., Inc.*,
   No. 20-16823, 2021 WL 4225536 (9th Cir. Sept. 16, 2021) ................................................ 24

*Conservation Force v. Salazar*,
   646 F.3d 1240 (9th Cir. 2011) ............................................................................................. 13

*Doe v. CVS Pharmacy, Inc.*,
   982 F.3d 1204 (9th Cir. 2020) ........................................................................................ 20, 21

*Ellenburg v. Brockway, Inc.*,
   763 F.2d 1091 (9th Cir. 1985) ......................................................................................... 18, 23

*Fantasy, Inc. v. Forgerty*,
   984 F.2d 1524 (9th Cir. 1993) ......................................................................................... 13, 14

*Sidney-Vinstein v. A.H Robins Co.*,
   697 F.2d 880 (9th Cir. 1983) ............................................................................................... 13

*Soo Park v. Thompson*,
   851 F.3d 910 (9th Cir. 2017) .................................................................................................. 2

*Steelman v. Prudential Ins. Co. Am.*,
   No. CIV. S-06-2746, 2007 WL 1080656 (E.D. Cal. Apr. 4, 2007) ...................................... 20

*Taylor v. Yee*,
   780 F.3d 928 (9th Cir. 2015) ............................................................................................... 13

*Vizcaino v. U.S. Dist. Ct. for W. Dist. of Wash.*,
   173 F.3d 713 (9th Cir. 1999) ............................................................................................... 11

*Wit v. United Behav. Health*,
   No. 14-CV-02346-JCS, 2020 WL 6479273 (N.D. Cal. Nov. 3, 2020) ................................. 10

CROWELL
& MORING LLP
ATTORNEYS AT LAW

*Wit v. United Behav. Health,*
No. 20-17363, 2022 WL 850647 (9th Cir. Mar. 22, 2022) .................................................. 12

*Wit v. United Behavioral Health,*
79 F.4th 1068 (9th Cir. 2023) ............................................................................. *passim*

*Wit v. United Behavioral Health,*
No. 14-CV-02346-JCS, 2023 WL 8717488 (N.D. Cal. Dec. 18, 2023).............................. 11

*Wright v. Or. Metallurgical Corp.,*
360 F.3d 1090 (9th Cir. 2004)........................................................................... 19, 23

**Statutes**

29 U.S.C. § 1132 ................................................................................................ *passim*

28 U.S.C. § 1651 ..................................................................................................... 11

**Other Authorities**

29 C.F.R. § 2560.503-1(h)(3) .................................................................................... 15

Dep't of Health & Human Services, Center for Medicare & Medicaid Services,
Medicare Claims Processing Manual, Chapter 4, § 260.1(B),
https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-
documents/clm104c04.pdf .................................................................................... 21

Rule 12(b)(6) ......................................................................................................... 13

Rule 12(f) .............................................................................................................. 13

Crowell
& Moring LLP
ATTORNEYS AT LAW

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiffs' Amended Complaint does little to solve the deficiencies in their original complaint, filed three years ago. Despite cosmetic and organizational changes, the fact remains: *Wit v. United Behavioral Health*, 79 F.4th 1068 (9th Cir. 2023), controls the outcome in this case and requires dismissal.

Although this ERISA case arises out of the denial of benefits under health benefits plans, Plaintiffs do not plausibly allege any facts to suggest that they might be *entitled* to benefits under the terms of those plans. Plaintiffs make this tactical choice because they know that showing a right to benefits would introduce a host of individualized issues that would later preclude class certification, including the basis for each individual class member's denial of benefits and what care was medically necessary for each individual class member. For example, some individuals might have had claims denied for reasons having nothing to do with the alleged flaws in UBH's former Level of Care Guidelines ("LOCGs"), which were used to assess whether treatment was medically necessary and covered under benefit plans. Other individuals might have had claims denied in part based on the LOCGs but also for independent reasons. Still, others might have had claims covered at different levels of care and thus suffered no injury under ERISA. The district court in *Wit* held that these inquiries would bar class certification. Plaintiffs' new reprocessing subclasses do not save their claims.

Seeking to avoid this problem, Plaintiffs argue (as the plaintiffs did in *Wit*) that they are entitled to *reprocessing* of previously denied claims because the LOCGs are flawed in multiple ways. In Plaintiffs' view, if the LOCGs were flawed, then Plaintiffs' claims must be reprocessed under appropriate guidelines, even if that reprocessing would not actually affect the benefits to which Plaintiffs are entitled. But *Wit* rejected such a challenge to the LOCGs, and ruled that Plaintiffs must show that the LOCGs they challenge in this case (or the reimbursement policy that is the subject of their Bundled Denial Class claims) were the but-for cause of an injury. For three reasons, *Wit* compels dismissal of the Amended Complaint in its entirety.

*First*, *Wit* requires dismissal of Plaintiffs' Guideline Denial Claims (Counts I and II). *Wit*

and other Ninth Circuit precedent require that Plaintiffs allege that UBH's conduct (here, the development and use of its former LOCGs) was the but-for cause of the injury they assert (here, the alleged denial of plan benefits). To prevail on their theory that UBH's LOCGs were not consistent with generally accepted standards of care, Plaintiffs must further establish a duty, rooted in their plans (the "Plans") or ERISA, creating some right to guidelines or coverage that is consistent with those generally accepted standards. Plaintiffs fall short on both of these elements. Additionally, consistent with *Wit*, Plaintiffs are unable to show the denial of benefits was arbitrary and capricious because they cannot establish that UBH's interpretation of the Plans was unreasonable. Plaintiffs' Count I for Breach of Fiduciary Duty should be dismissed to the extent it is based on Plaintiffs' Guideline Denial theory for similar reasons: Plaintiffs fail to allege the alleged fiduciary breach caused each of them any substantive harm cognizable under ERISA.

*Second*, *Wit* and Ninth Circuit law foreclose Plaintiffs' Bundled Denial of Benefits Claims (Counts I, III, and IV). Plaintiffs fail to identify any enforceable right, in their Plans or ERISA, to coverage of services on the "unbundled" basis they demand. And they fail to allege the essential element of harm because they do not allege that they requested coverage for any services on an "unbundled" basis or that those services would have been eligible for coverage under their Plans but-for the Facility-Based Reimbursement Policy they purport to challenge. The absence of harm requires dismissal of each of Plaintiffs' Bundled Denial Claims.

*Third*, in the alternative, the Court should dismiss or strike Plaintiffs' request for the remedy of claim reprocessing. Plaintiffs fail to allege a claim under 29 U.S.C. § 1132(a)(1)(B) that would allow reprocessing under *Wit*, and *Wit* holds that reprocessing is not available under 29 U.S.C. § 1132(a)(3) as a matter of law.

## II.    RELEVANT PLEADINGS[1]

### A.    Plaintiffs Are Beneficiaries Of ERISA-Governed Health Plans.

Six Plaintiffs bring this suit arising out of requests for coverage for residential treatment

---

[1] For purposes of this motion only, UBH accepts as true the properly-pled factual allegations in Plaintiffs' Amended Complaint, as the Court must do in analyzing this motion. *Soo Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017). UBH does not concede the veracity of these allegations.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1  for mental health and/or substance use disorders. Am. Compl. ¶¶ 75–183, ECF No. 59. Plaintiffs

2  are individuals, minors, and the parents of individuals who participated in self-funded or fully-

3  insured employee welfare benefits plans governed by ERISA and administered by UBH. As the

4  claims administrator for the mental health and substance use disorder benefits available under

5  Plaintiffs' Plans, UBH has "discretion to interpret the Plan terms, conditions, limitations, and

6  exclusions" and has "discretion to make coverage determinations for behavioral health services"

7  under the terms of the Plans. *Id*. ¶¶ 19–20.

8       To be covered under the terms of Plaintiffs' Plans, services must be, among other things,

9  "Medically Necessary" as defined in each Plaintiff's Plan. *Id*. ¶ 34. To be "Medically Necessary,"

10  services must be, among other things, consistent with "Generally Accepted Standards of Medical

11  Practice" or "prevailing medical standards and clinical guidelines." *Id*. ¶¶ 35–36.[2] In other words,

12  under the terms of Plaintiffs' Plans, not all services that are consistent with generally accepted

13  standards of care ("GASC") are "Medically Necessary," and not all "Medically Necessary"

14  services are eligible for plan coverage. Consistency with generally accepted standards is a

15  necessary (but not sufficient) element of "Medical Necessity," which is, in turn, a necessary (but

16  not sufficient) requirement for coverage under the unique terms of each Plaintiffs' Plan.

17       **B.    UBH Developed And Used Plan Coverage And Reimbursement Guidelines.**

18            **1.    LOCGs.**

19       Prior to the year 2020, and including for the years 2018 and 2019, UBH developed clinical

20  criteria known as LOCGs to determine whether certain behavioral health services were medically

21  necessary under the terms of the plans it administered, including Plaintiffs' Plans.[3] *See* Am.

22  Compl. ¶¶ 44–45. UBH's former LOCGs were "organized by the situs of care, or 'level of care,'

23  according to progressive levels of service intensity along the continuum of care (*i.e.*, outpatient,

24  intensive outpatient, partial hospitalization, residential, and hospital treatment)." *Id*. ¶ 46. For

25  both 2018 and 2019, UBH's former LOCGs included multiple "Common Criteria," applicable to

26

---

27  [2] Plaintiffs refer to these concepts collectively as "generally accepted standards of care" or "GASC." *See, e.g.*, Am. Compl. ¶¶ 38–43.

28  [3] UBH discontinued the use of its former LOCGs in 2019 as it relates to substance use disorder services, and in 2020 as it relates to mental health services. Am. Compl. ¶¶ 57–58.

all levels of care, as well as numerous other "specific criteria applicable to [each] particular level[] of care in the context of either mental health conditions or substance use disorders, which also had to be satisfied in order for coverage to be approved at a particular level of care." *Id.* ¶ 54.

### 2. Facility-Based Reimbursement Policy.

Plaintiffs also allege that UBH utilized a "Facility-Based Behavioral Health Program Reimbursement Policy," which, among other things, provided that when UBH approves coverage for "facility-based" behavioral health services—such as the residential treatment services at issue in this case—UBH reimburses for those services "using a single day rate for all expected components of an active treatment program." Am. Compl. ¶ 66. Plaintiffs allege that, if a provider bills for facility-based services at a level of care that is not eligible for coverage (*e.g.*, because that level of care is not medically necessary), "claims for facility-based services on a 'single day'" are denied on a "bundled basis, rather than determining whether to approve coverage for any of the lesser-included component services necessarily provided as part of the facility-based program." *Id.* ¶ 69.

### 3. Claim Denial Policy

Plaintiffs allege that UBH's review policy begins with its Care Advocates verifying the claimant's eligibility for benefits and determining whether any administrative exclusions or limitations preclude coverage. Am. Compl. ¶ 61. The Care Advocates then apply the LOCGs to determine if the coverage request "meet[s] the plan's GASC Requirement." *Id.* ¶ 62. Care Advocates cannot deny coverage requests on clinical grounds—only administrative grounds. *Id.* ¶ 63. If the coverage request does not meet the GASC requirement, the Care Advocate refers the review to a Peer Reviewer to issue a medical necessity denial. *Id.* ¶ 63. Plaintiffs allege that, "in practice, UBH does not complete Peer Reviews of coverage requests that can be denied on administrative grounds." *Id.* ¶ 64.

### C. Plaintiffs Allege That UBH Denied Their Requests For Coverage Of Residential Treatment Services.

Plaintiffs allege that they each sought coverage for residential treatment services for themselves or their child, and that UBH denied their requests, citing UBH's former 2018 and

2019 LOCGs. Am. Compl. ¶¶ 75–183. While Plaintiffs allege that UBH cited the LOCGs, no Plaintiff identifies the criterion or criteria that caused their individual claim for benefits to be denied. No Plaintiff alleges any facts to show that the specific provisions of the former LOCGs that they challenge in this case constituted UBH's sole basis for denying coverage of residential treatment services.

For the first time in their Amended Complaint, Plaintiffs make the conclusory allegation that "Plaintiffs and members of the putative Guideline Denial Class might have been entitled to benefits if UBH had applied guidelines that were consistent with the relevant plan terms." Am. Compl. ¶ 215. But no Plaintiff alleges any plausible facts to support this conclusory assertion. *See* Am. Compl. ¶¶ 75–183.  Indeed, not a single Plaintiff alleges that the residential treatment services at issue satisfied their Plans' respective definitions of Medically Necessary services (including, but not limited to GASC), let alone that the requested services were otherwise eligible for coverage under the terms of their health benefit plans as a whole. *See id.*

Each Plaintiff also alleges that, in denying coverage for residential treatment services, UBH indicated that care for that Plaintiff could have continued in a less intensive level of care (such as the partial hospitalization or intensive outpatient levels of care[4]). Am. Compl. ¶¶ 75–183. Plaintiffs allege that, "[o]n an un-bundled basis, residential treatment subsumes the clinical services" of the less intensive levels of care referenced by UBH. *Id.* ¶ 72. According to Plaintiffs, in denying coverage for the requested residential treatment services, UBH "did not approve benefits for the services" Plaintiffs received at the residential treatment facilities in question "at the 'daily rate' applicable to that lesser included level of care," nor "did UBH approve coverage for any of the component services" Plaintiffs received. *Id.* ¶ 134 (Plaintiff Loe); *see also id.* ¶¶ 75–183 (offering similar allegations for the remaining Plaintiffs). Plaintiffs allege UBH instead "denied coverage, in full, for each day of residential treatment" pursuant to the Facility-Based Reimbursement Policy. *Id.* ¶ 135 (Plaintiff Loe); *see also id.* ¶¶ 75–183.

---

[4] As defined in the plan document, UBH included with its previous motion to dismiss, neither partial hospitalization programs nor intensive outpatient treatment is 24/7 care. The former provides services for a minimum 20 hours per week, while the latter provides services for at least three hours per day, two days per week. Ex. A at 136, 139.

However, no Plaintiff identifies any term of their Plan that provides coverage for services on a "lesser included" or "unbundled" basis. No Plaintiff alleges that they actually submitted to UBH any request for coverage (let alone a claim for payment) for any of the "lesser included" services alleged in the Complaint. No Plaintiff alleges that UBH ever denied an actual request for some "lesser included" service. Nor do Plaintiffs allege that the "lesser included" or "unbundled" services they seek payment for were ever provided or would otherwise have been eligible for coverage under their Plans but-for the Facility-Based Reimbursement Policy.

### D. Plaintiffs Assert Four Causes of Action on Behalf of Two Putative Classes, Each with a "Reprocessing" Subclass.

Based on these allegations, Plaintiffs assert four Counts for relief under ERISA, 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3) on behalf of two putative classes and two related putative subclasses.

**Guideline Denial Claims**

Plaintiffs assert two Counts on behalf of a purported "Guideline Denial Class" defined as:

> Any member of a health benefit plan governed by ERISA whose request for coverage of residential treatment services for a mental illness or substance use disorder, or any portion thereof, was denied by UBH, between February 8, 2018 and the present, based upon UBH's Level of Care Guidelines, and was not subsequently approved in full following an administrative appeal.

Am. Compl. ¶ 190.[5]

In Count I, Plaintiffs allege that "UBH breached its fiduciary duties" to members of the Guideline Denial Class by: (1) "allowing its own financial self-interest to infect its development of its Level of Care Guidelines"; (2) "developing and adopting as its standard medical-necessity criteria to implement the plans' GASC Requirement Guidelines that were much more restrictive than generally accepted standards of care," and then (3) using those guidelines to "reduc[e] the amount of benefits due to plan participants and beneficiaries." Am. Compl. ¶ 209.

In Count II, Plaintiffs allege that UBH arbitrarily and capriciously denied plan benefits to the Guideline Denial Class by using its LOCGs to deny coverage "even though the Guidelines

---

[5] The Guideline Denial Class "excludes any member of a fully-insured plan governed by both ERISA and the state law of Connecticut, Rhode Island, or Texas, whose request for coverage of residential treatment was related to a substance use disorder, except that the Class includes members of plans governed by the state law of Texas who were denied coverage of substance use disorder services sought or provided outside of Texas." *Id.*

1    conflicted with, and were an unreasonable interpretation of, the written provision in the Plans that

2    required services to be consistent with generally accepted standards of care." *Id.* ¶ 215.

3        Plaintiffs also bring Count II on behalf of a "Guideline Denial Reprocessing Subclass"

4    defined as:

> Any member of the Guideline Denial Class who incurred expenses for
> residential treatment for which benefits were not paid, except that the
> Reprocessing Subclass shall not include class members whose written
> notification of denial, as reflected in UBH's records, (a) identifies a reason
> for denying the request for coverage other than the class member's failure
> to satisfy UBH's Level of Care Guidelines, and/or (b) specifies that the
> member's failure to satisfy the applicable Guideline was based solely on a
> portion of the Guideline that was unchallenged in this action.

10   Am. Compl. ¶ 191; *see also id.* ¶ 219.

11       As it relates to the Guideline Denial Claims, Plaintiffs seek orders: (1) "[d]eclaring that

12   the criteria in the 2018 and 2019 Level of Care Guidelines are not consistent with generally

13   accepted standards of care"; and (2) "[p]ermanently enjoining UBH from using guidelines or

14   other clinical criteria that are more restrictive than generally accepted standards of care to

15   implement any ERISA plan's requirement that services must be consistent with generally

16   accepted standards of care." Am. Compl., Prayer for Relief ¶¶ D, E. Further, on behalf of the

17   "Guideline Denial Reprocessing Subclass, Plaintiffs seek an injunction requiring UBH to

18   reprocess their requests for coverage using appropriate standards." *Id.* ¶ 219; *id.*, Prayer for Relief

19   ¶ H.

20   **Bundled Denial Claims**

21       Plaintiffs also assert three Counts on behalf of a "Bundled Denial Class" defined as:

> Any member of a health benefit plan governed by ERISA whose request
> for coverage of residential treatment services for a mental illness or
> substance use disorder was denied in full by UBH, between February 8,
> 2018 and the present and was not subsequently approved in full following
> an administrative appeal, and (a) whose written notification of denial
> states that services would be appropriate or could be provided at the partial
> hospitalization, intensive outpatient, or outpatient level of care; and (b)
> whose request for coverage of residential treatment UBH denied on a
> bundled, "per diem" basis rather than either approving services at the
> applicable rate for the alternative level of care UBH identified in its denial
> letter or approving coverage for any component services enumerated in the
> plan and provided as part of the residential treatment program for which
> coverage was requested.

Am. Compl. ¶ 193.

In Count I, Plaintiffs allege that UBH breached fiduciary duties to the Bundled Denial Subclass "by adopting and enforcing its Facility-Based Behavioral Health Program Reimbursement Policy" which Plaintiffs allege was "designed to minimize the amount of benefits paid to plan members and to maximize the impact of any denial of coverage." *Id.* ¶ 210.

In Count III, Plaintiffs allege that UBH arbitrarily and capriciously denied plan benefits to the Bundled Denial Class. The gravamen of Count III is Plaintiffs' allegation that "[d]espite making a determination, as to each Plaintiff and Bundled Denial Class member, that services at a less-intensive level of care . . . were medically necessary," UBH "did not approve coverage for" any "component services expressly covered under the Plaintiffs' and the Bundled Denial Class members' plans, even when coverage for those component services was requested separately." *Id.* ¶ 223; *see also id.* ¶ 224 (alleging "UBH's standard policy and practice of denying coverage for all facility-based services whenever it rejects coverage for treatment at a particular level of care, rather than considering the services on an un-bundled basis or approving coverage for the value of a lesser-included level of care, violates and/or unreasonably interprets the Plaintiffs' and the Bundled Denial Class members' plans.").

Plaintiffs also assert Count III on behalf of a "Bundled Denial Reprocessing Subclass" defined as:

> Any member of the Bundled Denial Class who incurred unreimbursed expenses for covered behavioral healthcare services, provided at a residential treatment facility, that were equivalent to services UBH stated were appropriate or could be provided to the member, but for which UBH denied coverage on a bundled, "per diem" basis as stated in the Bundled Denial Class definition above.

Am. Compl. ¶ 195; *see also id.* ¶ 227.

Finally, in Count IV,[6] Plaintiffs allege that UBH failed to establish and follow reasonable claim procedures as it relates to the Bundled Denial Class by: (1) "fail[ing] to disclose in its denial letters . . . that their coverage requests were denied in full pursuant to UBH's internal

---

[6] The Amended Complaint uses the title "Count III" for two different counts. For the purpose of this motion, "Count III" refers to the first "Count III," which is found at paragraphs 220–27 of the Amended Complaint. "Count IV" in this motion refers to the second "Count III," which is found at paragraphs 228–33 of the Amended Complaint.

Facility-Based Behavioral Health Program Reimbursement Policy"; and (2) "fail[ing] to provide any information on how the Plaintiffs or Class members could perfect their claims for the lesser-included component services" such as "by re-submitting the claims on an un-bundled basis . . . or by submitting a claim for the lesser-included level of care UBH admitted was medically-necessary." Am. Compl. ¶ 231.

As it relates to the Bundled Denial Claims, Plaintiffs seek orders: (1) "[d]eclaring that UBH's policy and practice of denying benefits for otherwise-covered services for the sole reason that UBH required those services to be submitted on a 'bundled' basis with additional services for which UBH denied coverage violates ERISA and the terms of Plaintiffs' plans"; and (2) "[p]ermanently enjoining UBH from denying benefits for otherwise-covered services for the sole reason that those services were provided as a part of facility-based care or otherwise provided along with additional services for which UBH denied coverage." Am. Compl., Prayer for Relief ¶¶ F, G. Further, on behalf of the "Bundled Denial Reprocessing Subclass, Plaintiffs seek an injunction requiring UBH to reprocess their requests for coverage using appropriate standards." Am. Compl. ¶ 227; *id.*, Prayer for Relief ¶ I.

### III.    THE *WIT* DECISION

In *Wit*, the plaintiffs—represented by Plaintiffs' counsel in this case—brought a virtually identical challenge to the 2011 through 2017 editions of UBH's former LOCGs. [7] *See* Am. Compl. ¶ 47 (alleging that *Wit* involved the "2011 through 2017 editions of UBH's Level of Care Guidelines"); and ¶ 53 (alleging that "UBH's 2018 and 2019 Level of Care Guidelines" at issue in this case "are only *slightly* revised versions of the Guidelines" at issue in *Wit*). Just like this case, the *Wit* plaintiffs brought claims under ERISA, 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3) for breach of fiduciary duty and wrongful denial of benefits, contending that UBH's LOCGs were required to be consistent with GASC, and that UBH breached its duties under ERISA because it

---

[7] To piggyback on *Wit*, Plaintiffs cast the 2018 and 2019 LOCGs at issue in this case as "substantially similar to" and "suffer[ing] from the same deficiencies as" the 2011–2017 LOCGs at issue in *Wit*. Compl. ¶¶ 42, 46, ECF No. 1. While the merits of those assertions are not before the Court on this motion to dismiss, Plaintiffs do not cite a single provision of the 2018 or 2019 LOCGs to support those allegations, because they are false. UBH retired its LOCGs relating to substance use disorder benefits in January 2019, and the 2018 LOCGs, and the 2019 LOCGs for mental health services reflected significant changes from the 2017 LOCGs at issue in *Wit*.

used LOCGs that were not consistent with GASC. *Compare, e.g., Wit v. United Behav. Health*, No. 14-CV-02346-JCS, 2020 WL 6479273, at *23 (N.D. Cal. Nov. 3, 2020) ("*Wit* Remedies Order"), *with* Am. Compl. ¶¶ 2–3. And just like this case, the principal relief sought by the *Wit* plaintiffs was "'reprocessing' of all class members' claims in accordance with" new guidelines that were consistent with GASC. *Wit*, 79 F.4th at 1081.

In *Wit*, the district court initially certified a "*Wit* Guideline Class" that was substantially similar identical to the "Guideline Denial Class" Plaintiffs allege here, consisting of:

> Any member of a health benefit plan governed by ERISA whose request for coverage of residential treatment services for a mental illness or substance use disorder was denied by UBH, in whole or in part, on or after May 22, 2011, based upon UBH's Level of Care Guidelines or UBH's Coverage Determination Guidelines.

*Wit*, 79 F.4th at 1078-79.[8] Following a 10-day bench trial, the trial court entered judgment in favor of the *Wit* plaintiffs and the certified classes on their claims for both improper denial of benefits and breach of fiduciary duty under both 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3). *Id*. at 1080. Plaintiffs later filed this lawsuit based on the same theories for a later period in time.

UBH appealed and, on August 22, 2023, the Ninth Circuit reversed certification of the *Wit* plaintiffs' denial of benefits claims seeking reprocessing. *Wit*, 79 F.4th at 1083–86. The Court held that plaintiffs challenging the denial of benefits must allege that they might be entitled to benefits and cannot simply seek reprocessing as a way to avoid the individualized nature of causation in ERISA claims. *Id*. at 1084 ("[W]e conclude that the district court erred in granting class certification here based on its determination that the class members were entitled to have their claims reprocessed regardless of the individual circumstances at issue in their claims."). The Ninth Circuit also held that the "same errors present in the district court's denial of benefits class certification order also infected its merits and remedy determinations." *Id*. at 1086. In addition, the Ninth Circuit held that the district court erred to the extent it "interpret[ed] the Plans to require coverage for all care consistent with" generally accepted standards. *Id*. at 1088. The Ninth Circuit thus reversed "the judgment on Plaintiffs' denial of benefits claim," and also reversed the

---

[8] The *Wit* trial court also certified two related classes, the *Alexander* Guideline Class and the *Wit* State Mandate Class. *Wit*, 79 F. 4th at 1079. The *Wit* trial court later partially decertified the classes "to exclude class members who successfully appealed their coverage denials" based on a procedural issue in identifying class members. *Id*. at 1080 n.4.

judgment on the *Wit* plaintiffs' claim for breach of fiduciary duty "to the extent the judgment on Plaintiffs' breach of fiduciary duty claim was based on the district court's erroneous interpretation" that the plans required coverage consistent with GASC. *Id*. at 1086–90.

The Ninth Circuit's holdings on class certification and merits decisions require dismissal here. First, in reversing class certification, the Ninth Circuit held that an ERISA beneficiary cannot maintain an ERISA claim against a plan administrator, whether under 29 U.S.C. §§ 1132(a)(1)(B) or (a)(3), absent a showing that the administrator's conduct was a but-for cause of actual harm to the member. A plaintiff may, under ERISA, contend that they have been denied their right to a "full and fair review" of their benefits claim based on application of an improper standard, *see Wit*, 79 F.4th at 1084, but to prevail, the plaintiff must show "that his or her claim was denied based on the wrong standard *and* that he or she might be entitled to benefits under the proper standard." *Id.* As the Ninth Circuit explained, since this showing of prejudice is an essential element of the claim, a plaintiff's failure to establish the necessary prejudice is not simply an issue for class certification. Those very "same errors"—*i.e.*, excusing the *Wit* plaintiffs from their obligation to establish prejudice—"also infected [the district court's] merits and remedy determinations," and the Ninth Circuit reversed on the merits.[9] *Id*. at 1086.

Second, the Ninth Circuit reversed on merits for the additional reason that the *Wit* plaintiffs' narrow focus on GASC was incompatible with ERISA and the Plans in question. Just like in this case, "while the Plans mandated that a treatment be consistent with GASC, they did not compel UBH to cover *all* treatment that was consistent with GASC." *Wit*, 79 F.4th at 1088. Thus, although the Ninth Circuit found no clear error "[t]o the extent the district court concluded

---

[9] In a decision following the Ninth Circuit's ruling, the district court in *Wit* interpreted the Ninth Circuit's reversal as limited to those "class members[] [whose] claims for reprocessing on the denial of benefits claims were defective," and concluded that the Ninth Circuit did not "revers[e] on the merits as to the denial of benefits claim based on Plaintiffs' failure to prove statutory causation under ERISA." *Wit v. United Behavioral Health*, No. 14-CV-02346-JCS, 2023 WL 8717488, at *25–26 (N.D. Cal. Dec. 18, 2023). UBH intends to file a petition for mandamus with the Ninth Circuit seeking immediate review of the *Wit* district court's order interpreting the Ninth Circuit's decision. *See Vizcaino v. U.S. Dist. Ct. for W. Dist. of Wash.*, 173 F.3d 713, 718–20 (9th Cir. 1999) (party may petition for mandamus under the All Writs Act, 28 U.S.C. § 1651, to enforce an appellate court's mandate). UBH has asked the *Wit* district court to stay proceedings pending a decision on the mandamus petition. *See* Joint Notice Regarding Case Schedule in *Wit*, Case No. 3:14-cv-02346, ECF No. 629 at 5 (N.D. Cal. Jan. 9, 2024).

that the challenged portions of the Guidelines represented UBH's *implementation* of the GASC requirement," it was error to "interpret[] the Plans to require coverage for all care consistent with GASC." *Id*. In *Wit*, as here, there was no basis in the Plans or ERISA to require guidelines (or coverage) solely consistent with GASC. *Id*. "To the contrary," the Ninth Circuit explained that "UBH's interpretation that the Plans do not require coverage for all care consistent with GASC does not conflict with the plain language of the Plans"; it gives "effect to all the Plan provisions . . . ." *Id*.. The Ninth Circuit then reversed on this ground the *Wit* plaintiffs' claims for *both* denial of benefits *and* breach of fiduciary duty. *Id*. at 1089.

## IV.    PROCEDURAL BACKGROUND

Plaintiffs filed the operative Complaint on November 4, 2021, ECF No. 1, after the trial court entered its judgment in *Wit*. Because the Ninth Circuit had not yet ruled on UBH's appeal in *Wit*, the Complaint essentially replicated *Wit*, relying heavily on the *Wit* district court judgment and findings. *See*, *e.g.*, Compl. ¶¶ 34–55, ECF No. 1. UBH moved to dismiss Plaintiffs' original complaint in this action on February 3, 2022. ECF No. 29. Thereafter, on March 22, 2022, the Ninth Circuit issued a Memorandum Disposition ("Memorandum Disposition") in *Wit,* in which it reversed the district court's judgment in favor of the plaintiffs. *Wit v. United Behav. Health*, No. 20-17363, 2022 WL 850647 (9th Cir. Mar. 22, 2022). UBH moved to stay proceedings in this action pending a final judgment on appeal in *Wit*. This Court granted the request to stay, holding that the "potential import of the *Wit* decision on the viability of at least a large part of this case is too great to ignore . . . ." ECF No. 46 at 2. In light of the stay, this court administratively denied UBH's motion to dismiss without prejudice. ECF No. 48.

After two petitions for rehearing, the Ninth Circuit withdrew its Memorandum Disposition (and a subsequent January 26, 2023 decision), and on August 22, 2023, issued its final, published opinion. *Wit*, 79 F.4th 1068. This Court lifted the stay in this action on October 2, 2023. Despite the Complaint's reliance on the largely-reversed decision in *Wit*, Plaintiffs did not seek to amend their Complaint, and the Court granted UBH leave to file a new motion to dismiss in light of the Ninth Circuit's decision in *Wit*. ECF No. 54.

UBH then moved to dismiss the Original Complaint on November 11, 2023, in which

1  UBH raised many of the same grounds for dismissal that it argues in the instant motion. *See* ECF

2  58. Rather than oppose UBH's motion, Plaintiffs filed the operative Amended Complaint on

3  December 5, 2023. ECF No. 59.

4  **V.    LEGAL STANDARD**

5      A Rule 12(b)(6) motion to dismiss "tests the legal sufficiency of a claim." *Conservation*

6  *Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). Dismissal can be based on the lack of a

7  cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.

8  *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015). "[O]nly a complaint that states a plausible claim

9  for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[M]ere

10  conclusory statements" are not enough to state a claim and "not entitled to be assumed true." *Id*.

11  at 664. "To survive a motion to dismiss, the complaint must allege enough *facts* to state a claim to

12  relief that is plausible on its face." *Taylor*, 780 F.3d at 935 (emphasis added) (quotation omitted).

13  And plausibility requires more than alleging facts that are "merely consistent with a defendant's

14  liability." *Iqbal*, 566 U.S. at 676 (quotation omitted). When evaluating a motion to dismiss, the

15  court should accept as true all well-pleaded allegations, but need not afford any weight to the

16  complaint's legal conclusions. *Id.*

17      A Rule 12(f) motion to strike is the method to eliminate redundant, immaterial,

18  impertinent, or scandalous matters in pleadings. *Fantasy, Inc. v. Forgerty,* 984 F.2d 1524, 1527

19  (9th Cir. 1993), *rev'd on other grounds,* 510 U.S. 517 (1994). The purpose of a Rule 12(f) motion

20  is to avoid the costs that arise from litigating spurious issues by dispensing with those issues prior

21  to trial. *Sidney-Vinstein v. A.H Robins Co.,* 697 F.2d 880, 885 (9th Cir. 1983). Immaterial matter

22  is defined as matter that "has no essential or important relationship to the claim for relief or the

23  defenses being pleaded." *Fantasy, Inc.,* 984 F.2d at 1527 (quoting 5 Charles A. Wright & Arthur

24  R. Miller, Federal Practice and Procedure §1382, at 706-07) (1990)). Impertinent matter is

25  defined as "statements that do not pertain, and are not necessary, to the issues in question." *Id.*

26  Granting a motion to strike may be proper if it will make the trial less complicated or if

27  allegations being challenged are so unrelated to plaintiffs' claims as to be unworthy of any

28  consideration as a defense and that their presence in the pleading will be prejudicial to the moving

1  party. *Id.*

2  **VI.    ARGUMENT**

3      **A.    *Wit* Requires Dismissal Of Plaintiffs' Guideline Denial Claims.**

4          **1.    Plaintiffs' Guideline Denial Benefits Claim (Count II) Should Be Dismissed Because Plaintiffs Do Not Allege Causation and Harm.**

5

6      Following *Wit*, Plaintiffs' facial challenge to UBH's guidelines in Count II is not viable.

7  Even if Plaintiffs could prove (and they cannot) that the 2018 and 2019 LOCGs were

8  "pervasively more restrictive" than GASC (Am. Compl. ¶ 3), and even if Plaintiffs could

9  establish that those LOCGs were used by UBH in adjudicating their claims for benefits, that is not

10  enough to state an ERISA claim under *Wit*. *Wit* confirms the common-sense principle that ERISA

11  does not provide a remedy "without a showing that application of the wrong standard could have

12  prejudiced the claimant." *Wit*, 79 F.4th at 1084.

13      Thus, to state an ERISA claim for denial of benefits, as Plaintiffs seek to do in Count II,

14  Plaintiffs must allege that "UBH's alleged error in utilizing the Guidelines . . . prejudice[ed]

15  them" in some concrete way. *Wit*, 79 F.4th at 1086. Plaintiffs cannot avoid this obligation by

16  seeking class-wide reprocessing of denied claims. *Cf. Id.* at 1084 ("[W]e conclude that the district

17  court erred in granting class certification here based on its determination that the class members

18  were entitled to have their claims reprocessed regardless of the individual circumstances at issue

19  in their claims."). But that is exactly what Plaintiffs try to do.

20      In a single sentence, Plaintiffs parrot language from the Ninth Circuit's decision in *Wit*

21  and allege that *all* named Plaintiffs and every "member[] of the putative Guideline Denial Class

22  might have been entitled to benefits if UBH had applied guidelines that were consistent with the

23  relevant plan terms." Am. Compl. ¶ 215. But *no Plaintiff* alleges a single fact that would meet

24  their affirmative burden, as detailed in *Wit*, to "show" why that is true. *Wit*, 79 F.4th at 1084 (a

25  plaintiff must "show[] that he or she might be entitled to benefits under the proper standard").

26  Instead, Plaintiffs pronounce that, because "in practice" UBH assesses non-clinical,

27  "administrative grounds" for denial before deciding clinical grounds such as medical necessity, as

28  long as the LOCGs were cited in their benefit decisions, "the Guidelines' criteria were necessarily

1    the exclusive and decisive ground for denial." Am. Compl. ¶¶ 64, 65. That conclusory allegation

2    cannot save their deficient denial of benefits claim for two reasons.

3         First, Plaintiffs' assertion is not only false, it is directly contradicted by Plaintiffs' own

4    Plan terms, which are incorporated into the Amended Complaint by reference. For example, like

5    most plans UBH administers, Plaintiff Beach's Plan *also* excludes coverage for "all services

6    related to Experimental or Investigational or Unproven Services" and for "Custodial care or

7    maintenance care" (as those terms are defined in the Beach Plan), irrespective of whether those

8    services are medically necessary or consistent with generally accepted standards of care. *See*

9    Beach Plan, Ex. A to Nguyen Declaration ("Ex. A") at pp. 81 & 89. Yet Plaintiffs allege no facts

10   to suggest that decisions about those exclusions (*i.e.*, whether services are

11   Experimental/Investigational/Unproven or Custodial under the terms of the plans) are

12   "administrative grounds" that would be determined by a non-physician Care Advocate. *See* 29

13   C.F.R. § 2560.503-1(h)(3) (noting "determinations with regard to whether a particular treatment,

14   drug, or other item is experimental, [or] investigational" require "medical judgment").

15        Second, to the extent such an assumption is possible, it is insufficient to sustain a claim

16   for denial of benefits under the Ninth Circuit's decision in *Wit*. As a matter of law, a showing that

17   a "claim was denied based on the wrong standard" does not, by itself, establish the necessary

18   prejudice to sustain a claim for denial of benefits. *Wit*, 79 F.4th at 1084. That is precisely the sort

19   of "facial challenge," devoid of any showing of causation or harm, that the Ninth Circuit rejected

20   in *Wit*. Rather, Plaintiffs must also allege facts to show *actual prejudice* to their benefits flowing

21   from the application of that standard (i.e., the LOCGs). *Id*. (plaintiffs asserting a denial of benefits

22   claim must "show[] that application of the wrong standard could have prejudiced the claimant").

23        Here, Plaintiffs admit, as they must, that their claims for residential treatment services

24   were denied for lack of "medical necessity" under the terms of their plans. *See*, *e.g.*, Am. Compl.

25   ¶ 179 (Plaintiff Zoe describing "UBH's repeated medical-necessity denials"); *see also id*. ¶ 77

26   (alleging Plaintiff Beach's adverse benefit determination was based on UBH's "Medical

27   Necessity criteria"); ¶ 209 (alleging that the challenged LOCGs constituted UBH's "standard

28   medical-necessity criteria"). And despite their narrow focus on plan terms requiring that coverage

be consistent with GASC, even Plaintiffs acknowledge that, under the terms of their plans, consistency with GASC is insufficient to render services "Medically Necessary," and thus eligible for coverage. Am. Compl. ¶ 34. Yet *not a single Plaintiff* alleges that the residential treatment services for which they sought coverage were "Medically Necessary" under the terms of their respective benefit plans. For example, under Plaintiff Beach's Plan, services are only "Medically Necessary" if they are *all* of the following:

- "In accordance with *Generally Accepted Standards of Medical Practice*";
- "Clinically appropriate, in terms of type, frequency, extent, service site and duration, and considered effective for your Sickness, Injury, Mental Illness, substance-related and addictive disorders, disease or its symptoms";
- "Not mainly for your convenience or that of your doctor or other health care provider";
- "Not more costly than an alternative drug, service(s), service site or supply that is at least as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of your Sickness, Injury, disease or symptoms."

Ex. A at 137. But Plaintiff Beach does not allege that her request for residential treatment services satisfied (or could satisfy) any of these other, additional requirements for "Medical Necessity" under the terms of her plan. In other words, not a single Plaintiff actually alleges that "he or she might be entitled to benefits under the proper standard" of GASC, *Wit*, 79 F.4th at 1084, because no Plaintiff alleges that the residential treatment services at issue satisfied plan requirements of medical necessity.

This is no accident. Such allegations would raise individualized issues, rendering class certification impossible. The member-specific questions would have included: whether a treatment was medically necessary based on each individual's specific medical records; whether a lower level of care would have been appropriate for each individual; whether each individual Plaintiff could satisfy the criteria described in the alternative guidelines they ask the Court to require; and whether each individual completed all administrative requirements for coverage, such as providing sufficient documentation, timely submitting the coverage request, and exhausting any other required remedies. These questions could not be resolved on a class-wide basis, and the but-for analysis ERISA requires would implicate these and many other inquiries.[10]

---

[10] This is not hypothetical. Under Plaintiff Beach's Plan, for example, Plaintiff Beach would still need to show that the services were "clinically appropriate, in terms of type, frequency, extent, service cite, and duration" and that the services were "[n]ot more costly than an alternative . . .

Like in *Wit*, Plaintiffs cannot and do not allege that *every* criterion or provision in the LOCGs was inconsistent with GASC. *Compare also* Am. Compl. ¶ 47 (alleging that the 2018 and 2019 LOCGs at issue in this case were "substantially similar" to the LOCGs at issue in *Wit*), *with Wit*, 79 F.4th at 1085 ("there are also many provisions of the Level of Care Guidelines that Plaintiffs did not challenge and that the district court did not find to be overly restrictive"). And they do not allege facts to establish that their requests for benefits were denied based solely on a challenged provision of the LOCGs.

This too requires dismissal because, as the Ninth Circuit explained, Plaintiffs "who were denied coverage solely based on unchallenged provisions of these Guidelines were [not] denied full and fair review," nor were Plaintiffs "whose claims were denied *in part* based on the Guidelines." *Wit*, 79 F.4th at 1085. To state a claim under ERISA, Plaintiffs must make "at least some showing that UBH employed an errant portion of the Guidelines that related to his or her claim." *Id*. at 1086. And a denial that also was supported by a "wholly independent" ground, apart from the challenged provisions of the LOCGs, does not give rise to a remedy. *Id*. at 1085–86; *see also id*. at 1088 (reversing on the merits in part because the district court imposed a remedy even when "the denial letter provided independent reasons for the denial of coverage").

That Plaintiffs seek other remedies here in addition to claim reprocessing, *see* Am. Compl., Prayer for Relief, ¶¶ A–I, does not change this result. Whatever relief they seek, Plaintiffs failed to allege any plausible connection between their facial challenge to the LOCGs and the denial of benefits, from which all of their claims for relief arise.

  **2. Plaintiffs' Breach Of Fiduciary Duty Claim (Count I) Based On Their Guideline Denial Theory Should Be Dismissed Because Plaintiffs Do Not Allege Causation and Harm.**

Plaintiffs' Count I for Breach of Fiduciary Duty also fails as it relates to the Guideline Denial theory of liability (Am. Compl. ¶ 209) for similar reasons.

---

"service(s), service site or supply that is at least as likely to produce equivalent therapeutic or diagnostic results" as the residential treatment services requested. Ex. A at 137. And by Plaintiff Beach's own admission, questions relating to these other requirements of medical necessity are *directly implicated* by the benefit decision she challenges in this case. *See* Am. Compl. ¶ 87 (alleging that, UBH denied coverage for residential treatment, in part because "Your child did not have clinical issues requiring 24-hour monitoring in a residential setting. Your child did not have mental health issues preventing treatment in a less intensive setting").

Under settled Ninth Circuit law that was reaffirmed in *Wit*, the requirement of prejudice applies equally to Plaintiffs' claim for "breach of fiduciary duty." *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1097 (9th Cir. 1985). Even when an ERISA administrator's "procedural violation constitutes a breach of fiduciary duties," a "substantive remedy would be appropriate only if the procedural defects caused a substantive violation or themselves worked a substantive harm." *Id.* at 1096–97 (citation omitted) (cited with approval in *Wit*, 79 F.4th at 1084). Thus, whether the claim is one for improper denial of benefits, *see Wit*, 79 F.4th at 1084–85, or for a "breach of fiduciary duties" (as in *Ellenburg*), an ERISA plaintiff seeking substantive remedies must establish that they suffered a "substantive harm," not merely a procedural one. *See Ellenburg*, 763 F.2d at 1096.

Plaintiffs will likely argue that, in *Wit*, the Ninth Circuit did "not disturb" the district court's findings made in support of the *Wit* plaintiffs' breach of fiduciary duty claim "that financial incentives infected UBH's Guideline development process and that UBH developed the Guidelines with a view toward its own interests." *Wit*, 79 F.4th at 1088 n.7. But even if Plaintiffs could make a similar showing for the 2018 and 2019 LOCGs at issue in this case (they cannot), that is beside the point. The only *harm* Plaintiffs allege from their allegation that UBH "allow[ed] its own financial self-interest to infect its development of its Level of Care Guidelines," is that those financial interests resulted in LOCGs that were allegedly "much more restrictive than generally accepted standards of care," which UBH then used to "reduce the amount of benefits due to plan participants and beneficiaries." Am. Comp. ¶ 209; *see also id.* ¶ 184 (alleging "Plaintiffs have been harmed" by purported "unlawful denials").[11] By Plaintiffs' own allegations, their claim for breach of fiduciary duty based on purported "financial self-interest" is

---

[11] Plaintiffs allege a host of other procedural harms as part of their allegations of Article III standing. But even those allegations make it clear that all of the purported harm at issue in this case flow from Plaintiffs' alleged right to plan benefits. *See* Am. Compl. ¶ 184 (alleging "Plaintiffs have been harmed" because UBH: (1) "deprived Plaintiffs of their right to a full and fair review of their requests for benefits"; (2) "presented a material risk to Plaintiffs' interest in the benefits promised by their employer-sponsored Plans"; (3) "impermissibly narrow[ed] the scope of their benefits"; and (4) made it "impossible for Plaintiffs to know the scope of coverage their Plans will actually provide"). Plaintiffs also allege that Plaintiff Beach was harmed by the alleged "wrongful denial of coverage" in that Plaintiff Beach was required to "remove her daughter from residential treatment prematurely . . . ." *Id.*

1    indistinguishable from their "erroneous interpretation of the Plans," *Wit*, 79 F.4th at 1082, 1089,

2    and is equally precluded by *Wit*.

3         In any event, Plaintiffs fail to allege anything in ERISA or the terms of their plan that

4    would impose a fiduciary duty to develop "standard medical necessity-criteria" (Am. Compl. ¶

5    209) that were solely consistent with GASC, as opposed to the terms of Plaintiffs' Plans as a

6    whole. The function of ERISA is to "protect contractually defined benefits." *Wit*, 79 F.4th at 1082

7    (*quoting US Airways, Inc. v. McCutchen*, 569 U.S. 88, 100 (2013)). ERISA does not "mandate

8    what kind of benefits employers must provide." *Black & Decker Disability Plan v. Nord*, 538

9    U.S. 822, 833 (2003) (quoting *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996)). Thus, as in

10    *Wit*, UBH cannot be liable for developing and using its former LOCGs so long as the LOCGs

11    "give[] effect to all the Plan provisions" as a whole. *Wit*, 79 F.4th at 1088. Nothing in ERISA

12    gives Plaintiffs a free-floating right to guidelines that solely describe a single coverage term in

13    their Plans, such as GASC, and UBH cannot have breached any fiduciary duties so long as it

14    "complied with the [p]lan[s'] lawful terms" in determining coverage. *Wright v. Or. Metallurgical*

15    *Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004) (no breach of ERISA duty of loyalty where plan

16    administrator "complied with the plan's lawful terms" because "ERISA does no more than protect

17    the benefits which are due to an employee under a plan").

18         Plaintiffs do not allege any "substantive harm" from their facial challenge to UBH's

19    former LOCGs, and they do not allege any fiduciary duty to adopt guidelines that were solely

20    consistent with GASC. Their claim for breach of fiduciary duty based on their Guideline Denial

21    claim should be dismissed.

22        **B.**    ***Wit* Requires Dismissal Of Plaintiffs' Bundled Denial Claims.**

23         Plaintiffs' Bundled Denial Claims (Counts III and IV, and Count I based on the Bundled

24    Denial theory of fiduciary breach) fail for similar reasons. While ostensibly based on a different

25    policy—the Facility-Based Reimbursement Policy—Plaintiffs' legal theory for these claims is

26    indistinguishable from, and suffers the same defects as, their Guideline Denial Claims. The

27    Bundled Denial Claims should be dismissed under *Wit* for the same reasons.

28

**1.    The Bundled Denial of Benefits Claim (Count III) Should Be Dismissed.**

    **a.    Plaintiffs Do Not Allege Any Obligation Under Their Plans Or ERISA To Authorize Or Pay Claims On An "Unbundled" Basis.**

The crux of Plaintiffs' Bundled Denial of Benefits Claim (Count III) is their allegation that, after indicating that care could continue at a lower level of intensity (such as partial hospitalization or intensive outpatient services), "UBH did not approve coverage" for "component services" within the denied residential treatment services on "an un-bundled basis" based on "standard policy" that facility-based services are reimbursed at a single, *per diem* rate. Am. Compl. ¶¶ 223–24. Plaintiffs declare that this alleged policy "violates and/or unreasonably interprets the Plaintiffs' and the Bundled class members' plans," *Id*. ¶ 224, but tellingly fail to cite a single term in any Plaintiff's Plan to support that assertion. *See Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1213 (9th Cir. 2020) ("To plead a violation" of 29 U.S.C. § 1132(a)(1)(B), a plaintiff must plead, among other things, "the provisions of the plan that entitle [them] to benefits."); *Steelman v. Prudential Ins. Co. Am.*, No. CIV. S-06-2746 LKK/GGH, 2007 WL 1080656, at *7 (E.D. Cal. Apr. 4, 2007) (a claim under § 1132(a)(3) based on the violation of plan terms "must identify a specific plan term that confers the benefit in question"). While Plaintiffs note certain outpatient services, which may or may not be included in any particular residential treatment program or be eligible for coverage *on their own*, *see* Am. Compl. ¶ 224, they allege nothing in their Plans requiring coverage of those services on an "unbundled" basis when received as part of residential treatment. *See ABC Servs. Grp., Inc. v. Aetna Health & Life Ins. Co.*, No. 22-55631, 2023 WL 6532648, at *1 (9th Cir. Oct. 6, 2023) (affirming dismissal of an ERISA claim; a plaintiff "must do more than broadly allege" that ERISA administrators under "distinct plans all violated the same generalized obligation to reimburse mental health and substance abuse treatment").

For example, Plaintiff Beach's Plan specifically provides that, even when services are covered, payment will only be made "in accordance with UnitedHealthcare's reimbursement policy guidelines." Ex. A at 22, 132. Beach's Plan expressly allows those reimbursement policies

1   to be "in accordance with," among other things, reimbursement policies "[a]s used for Medicare."

2   *Id*. at 132. Plaintiffs utterly fail to allege any facts showing how the Facility-Based

3   Reimbursement Policy runs afoul of these or other Plan terms. *See Almont Ambulatory Surgery*

4   *Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1159 (C.D. Cal. 2015) ("Plaintiffs will

5   have to plead that for each plan, the terms of the plan: . . . dictat[ed] that these covered services

6   would be paid according to a specific reimbursement rate . . . which must be specified") (cited

7   with approval in *CVS Pharmacy*, 982 F.3d at 1213). Nor can they do so because UBH's Facility-

8   Based Reimbursement Policy is squarely "in accordance with" Medicare guidance on the

9   "bundling" of facility-based services. Like the policy Plaintiffs challenge here, Medicare

10  reimbursement guidelines frequently require that facility-based services be "bundled." For

11  example, according to Medicare, facility-based partial hospitalization services "must be billed" as

12  the facility-based service itself (e.g., partial hospitalization), and not as multiple "component"

13  services. Dep't of Health & Human Services, Center for Medicare & Medicaid Services,

14  Medicare Claims Processing Manual, Chapter 4, §

15  260.1(B),https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-

16  documents/clm104c04.pdf.

17       As a matter of law, Plaintiffs cannot state a claim for denial of benefits based on a policy

18  that "gives effect to all the Plan provisions" as a whole. *Wit*, 79 F.4th at 1088.

19              **b.    Plaintiffs Do Not Allege Any Prejudice Flowing From UBH's
                       Purported Failure To Authorize Coverage For Services**
20                     **Plaintiffs Did Not Request.**

21       Plaintiffs' Bundled Denial Claim also fails for the related reason that no Plaintiff alleges

22  any harm to their right to benefits resulting from UBH's alleged application of the Facility-Based

23  Reimbursement Policy. *See Wit*, 79 F.4th at 1084–86. Indeed, as noted above, the Facility-Based

24  Reimbursement Policy cannot have possibly harmed any Plaintiffs' right to plan benefits because

25  no Plaintiff alleges any right to coverage on an "unbundled" basis. Compounding this problem,

26  only Plaintiff Poe alleges that they ever requested coverage for any services on an "unbundled" or

27  "lesser included" basis, and they do not allege that they submitted any claims to UBH for

28  payment of any "unbundled" or "lesser included" services. *See* Am. Compl. ¶¶ 64–153. Other

1    than Plaintiff Poe, the only services for which Plaintiffs allege they sought coverage were

2    residential treatment services specifically. *Id.*

3        And while Plaintiff Poe vaguely alleges that he "requested that UBH provide coverage for

4    medically necessary services that were 'separate and apart from' residential treatment" (Am.

5    Compl. ¶ 144), even he does not allege that he ever submitted an actual claim for reimbursement

6    for those services to which the Facility-Based Reimbursement Policy would have applied. *See*

7    Am. Compl. ¶ 69 (alleging that the Facility-Based Reimbursement Policy is a "reimbursement

8    policy" used to "*deny* claims").

9        Nor do Plaintiffs allege any facts to show that, had they submitted claims for such "lesser

10   included" or "unbundled" services, they would have been entitled to payment but-for the Facility-

11   Based Reimbursement Policy. For example, no Plaintiff alleges that the facility where they

12   received residential treatment was actually licensed to provide services at the "lesser included"

13   level of care. *See* Ex. A. at 88 (Plaintiff Beach's Plan stating that coverage is excluded for

14   "[s]ervices performed by an unlicensed provider or a provider who is operating outside of the

15   scope of his/her license"). Nor does any Plaintiff allege that the "service site and duration" where

16   they received the alleged residential treatment services was "[c]linically appropriate" for the

17   alternative "lesser included" or "unbundled" services they are seeking now.[12] *Id.* at 137 (Plaintiff

18   Beach's Plan stating that, to be medically necessary, services must be "[c]linically appropriate, in

19   terms of type, frequency, extent, service site and duration, and considered effective").

20       Plaintiffs do not, because they cannot, allege any facts to establish that they "might be

21   entitled to benefits," *Wit*, 79 F.4th at 1084, of any "lesser included" or "unbundled" services but

22   for the application of the Facility-Based Reimbursement Policy. The Bundled Denial of Benefits

23   Claim (Count III) should be dismissed for this reason, as well.

24

25

26   _____

27   [12] For example, partial hospitalization and intensive outpatient services are both "outpatient"
     levels of care, meaning that the patient does not remain in the treatment facility overnight. In
     many instances, the patient's ability to go home every night is an essential component of those
28   outpatient treatment services that is simply not available in an inpatient treatment setting, such as
     residential treatment.

1

2

### 2. The Breach Of Fiduciary Duty Claim (Count I) Based on Plaintiffs' Bundled Denial Theory Should Be Dismissed.

3

For all the same reasons, Plaintiffs' Count I for Breach of Fiduciary duty also fails to state

4

a claim to the extent it is based on Plaintiffs' Bundled Denial theory. Am. Compl. ¶ 210.

5

Again, Plaintiffs do not identify anything in their plans or ERISA that would require UBH

6

to cover services on an "unbundled" or "lesser included basis." This failure precludes their breach

7

of fiduciary duty claim based on the Facility-Based Reimbursement Policy because UBH cannot

8

have breached any fiduciary duties so long as it "complied with the [p]lans' lawful terms" in

9

determining coverage. *Wright*, 360 F.3d 1100 (no breach of ERISA duty of loyalty where plan

10

administrator "complied with the plan's lawful terms" because "ERISA does no more than protect

the benefits which are due to an employee under a plan").

11

And even if Plaintiffs had alleged facts to support a fiduciary breach, that is insufficient to

12

support a claim because no Plaintiff alleges any facts to show any substantive harm flowing from

13

that purported breach. No Plaintiff alleges that they submitted any claims for reimbursement to

14

which the Facility-Based Reimbursement Policy would have applied. And no Plaintiff alleges

15

that, had they submitted "unbundled claims," those claims might have been otherwise eligible for

16

payment under the terms of their plans. *See supra* Section VI.B.1.b. As a matter of law, Plaintiffs

17

are not entitled to a "substantive remedy," even for breach of fiduciary duty, because they fail to

18

allege that the Facility-Based Reimbursement Policy was actually applied to them in a way that

19

"worked a substantive harm." *Ellenburg*, 763 F.2d at 1096–97.

20

### 3. Plaintiffs' Adequate Notice Claim (Count IV) Should Be Dismissed Because Plaintiffs Do Not Allege that the Facility-Based Reimbursement Policy Applied to Them.

21

22

Plaintiffs assert their Count IV solely under their Bundled Denial theory, and allege that

23

UBH violated ERISA procedural requirements in two ways: (1) by "fail[ing] to disclose in its

24

denial letters . . . that their coverage requests were denied in full pursuant to UBH's internal

25

Facility-Based Behavioral Health Program Reimbursement Policy"; and (2) by "fail[ing] to

26

provide any information on how the Plaintiffs or Class members could perfect their claims for the

27

lesser-included component services" that Plaintiffs contend should have been covered. Am.

28

1    Compl. ¶ 231. "By doing so," Plaintiffs allege that UBH "deprived the Plaintiffs and the Bundled

2    Denial Class members of any opportunity to object to the 'specific reason' for the denial, . . . and

3    any opportunity to perfect their claims for benefits for the lesser-included services" in purported

4    violation of ERISA procedural requirements. *Id*. ¶ 231; *see also id.* ¶ 230 (citing 29 U.S.C. §

5    1133 and 29 C.F.R. § 2560.503-1). This claim, too, should be dismissed for the same reasons as

6    Plaintiffs' other Bundled Denial Claims.

7            As the Ninth Circuit has explained, procedural claims, such as Plaintiffs' Count IV here,

8    alleging that an ERISA administrator "failed to comply with the claims-processing rules set forth

9    in" ERISA are indistinguishable from a claim for denial of benefits: "both the full-and-fair-review

10   claim *and* the reimbursement claim are means of obtaining the same desired end: reimbursement

11   from" the administrator. *Condry v. UnitedHealth Grp., Inc.*, No. 20-16823, 2021 WL 4225536, at

12   *2 (9th Cir. Sept. 16, 2021). Thus, a "bare procedural violation" of ERISA's procedural

13   requirements is not enough to state a claim. *Id*. at *2–3 (dismissing claim that an ERISA

14   administrator "failed to comply with" ERISA's "claims-processing rules"). Like their other

15   claims, Plaintiffs' claim that UBH violated ERISA's claim processing requirements requires a

16   showing that Plaintiffs might have been "entitled to reimbursement" but for the asserted

17   procedural errors. *Id*. at *3 (dismissing ERISA claim processing claim where "send[ing]" the

18   plaintiffs "a clearer denial letter could not possibly lead to reimbursement"). Count IV should be

19   dismissed.

20       **C.    In The Alternative, Plaintiffs' Prayers For Claim Reprocessing Should Be
             Dismissed Or Stricken.**

21
             The Court need not consider whether Plaintiffs have sufficiently pled entitlement to any

22   specific form of relief because, as discussed above, Plaintiffs fail to state *any* claim for relief.

23   Nevertheless, in the event that the Court allows a portion of Plaintiffs' four counts to proceed, the

24   Court should dismiss or strike Plaintiffs' prayers for claim reprocessing. *See* Am. Compl., Prayer

25   For Relief, ¶¶ H, I. Under settled Ninth Circuit law, Plaintiffs are not entitled to the reprocessing

26   remedy under ERISA.

27           As discussed above, the Ninth Circuit's analysis in *Wit* extends well beyond Plaintiffs'

28

prayer for claim reprocessing, and goes to the basic elements of Plaintiffs' claims for relief. Even so, there can be no dispute that the Ninth Circuit's holding in *Wit* establishes that Plaintiffs' facial challenge to the LOCGs cannot support claim reprocessing under ERISA. *See Wit*, 79 F.4th at 1084 ("We have never held that a plaintiff is entitled to reprocessing without a showing that application of the wrong standard could have prejudiced the claimant."). For all the reasons already discussed, Plaintiffs fail to allege the element of prejudice as it relates to either of their four Counts and their prayer for claims reprocessing should be dismissed. In addition, *Wit* holds that claim reprocessing is not an available remedy as a matter of law under 29 U.S.C. § 1132(a)(3). 79 F.4th at 1086 ("the district court erred in concluding that reprocessing was an available remedy under 29 U.S.C. § 1132(a)(3)"). Plaintiffs' prayer for reprocessing also should be dismissed to the extent that Plaintiffs seek that remedy under § 1132(a)(3).

## VII. CONCLUSION

Because Plaintiffs cannot state a claim for breach of fiduciary duty, denial of benefits based on the LOCGs, denial of benefits based on the Facility-Based Behavioral Health Program Reimbursement policy, and adequate notice as a matter of law, Plaintiffs' Amended Complaint should be dismissed in its entirety. In the alternative, the Court should dismiss or strike Paragraphs H and I of Plaintiffs' prayer for relief requesting the remedy of claim reprocessing.

Dated: December 19, 2024                    CROWELL & MORING LLP

                                            By: /s/ *Jennifer S. Romano*
                                                Jennifer S. Romano
                                                Andrew Holmer
                                                Attorneys for Defendant
                                                UNITED BEHAVIORAL HEALTH