PSYCH-APPEAL, INC.
Meiram Bendat (Cal. Bar No. 198884)
7 West Figueroa Street, Suite 300
PMB # 300059
Santa Barbara, CA 93101
Tel: (310) 598-3690
mbendat@psych-appeal.com

ZUCKERMAN SPAEDER LLP
D. Brian Hufford (*pro hac vice*)
Jason S. Cowart (*pro hac vice*)
485 Madison Avenue, 10th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256
dbhufford@zuckerman.com
jcowart@zuckerman.com

ZUCKERMAN SPAEDER LLP
Caroline E. Reynolds (*pro hac vice*)
M Moore (*pro hac vice*)
1800 M St., NW, Suite 1000
Washington, DC 20036
Tel: (202) 778-1800
Fax: (202) 822-8106
creynolds@zuckerman.com
mmoore@zuckerman.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| BARBARA BEACH, on her own behalf and on behalf of her minor daughter and all others similarly situated, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED BEHAVIORAL HEALTH, <br><br> Defendant. | Case No. 3:21-cv-08612-RS <br><br> **PLAINTIFFS' OPPOSITION TO UBH'S MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(6) OR, IN THE ALTERNATIVE, TO STRIKE PURSUANT TO F.R.C.P. 12(f)** <br><br> Date:       February 6, 2025 <br> Time:       1:30 p.m. <br> Courtroom:   3, 17th Floor <br> Judge:      Hon. Richard Seeborg |

# TABLE OF CONTENTS

**Page**

I.   Background ........................................................................................................ 2

   A.   Facts Alleged in the Amended Complaint ............................................. 2

      1.   UBH is a Fiduciary of Plaintiffs' Plans ...................................... 2

      2.   Plaintiffs' Plans Cover Behavioral Health Treatment, Subject to Plan Exclusions and Limitations. ........................................................ 2

      3.   UBH Implemented the Plans' Generally Accepted Standards of Care Requirement Through its Level of Care Guidelines. ..................... 3

      4.   UBH Deliberately Made its Level of Care Guidelines More Restrictive than the Plans' GASC Requirement. ........................................... 3

      5.   UBH Denied the Plaintiffs' Requests for Coverage of Residential Treatment Pursuant to its LOCGs. ............................................... 4

      6.   UBH Imposed a Bundling Requirement on Plaintiffs' Claims, Even Though No Such Requirement Appears in the Plans. ...................... 4

      7.   UBH Flouted its Duty to Establish and Follow Reasonable Claims Processing Procedures. ............................................................... 5

      8.   UBH's Misconduct Harmed the Plaintiffs ................................... 6

   B.   The Plaintiffs' Claims and Legal Theories .......................................... 7

   C.   The Relief Plaintiffs Seek for their Claims .......................................... 8

   D.   The *Wit* Litigation and its Relationship to this Case .............................. 8

      1.   The Ninth Circuit's Ruling in *Wit* ............................................. 9

      2.   The *Wit* District Court's Order on the Scope of Remand ............. 11

II.  Legal Standards ............................................................................................. 12

III. Argument ...................................................................................................... 12

   A.   Count I Plausibly Pleads a Claim for Breach of Fiduciary Duty. ......... 13

      1.   Plaintiffs Plausibly Pleaded that UBH's Fiduciary Breaches Caused Harm to Plaintiffs ................................................................... 13

      2.   Plaintiffs Plausibly Plead that UBH Breached its Fiduciary Duties ........ 15

   B.   Counts II and III Plausibly Plead Claims Under ERISA § (a)(1)(B). .................. 17

      1.   *Wit III* Did Not Purport to State a New Standard for Pleading or Proving ERISA § (a)(1)(B) Claims. ........................................... 17

      2.   *Wit III* Stated a "Potential Prejudice" Standard for a Reprocessing Remedy, Not an "Actual Entitlement to Benefits" Standard. ............. 18

      3.   Plaintiffs Plausibly Allege that They "Might be Entitled" to Benefits ..... 18

a.   Count II – Guideline Denials .................................................... 19

b.   Count III – Bundling Policy Denials.................................................... 20

C.   Count IV Plausibly Pleads that UBH Failed to Establish and Follow Reasonable Claims Procedures. .............................................................. 23

D.   UBH's Motion to Dismiss or Strike Portions of Plaintiffs' Prayer for Relief is Frivolous and Must be Denied. .............................................................. 24

IV.   Conclusion .............................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................................................... 12

*Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*,
718 F. Supp. 2d 1167 (N.D. Cal. 2010) ........................................................................ 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................ 12, 23

*City of L.A. v. Lyons*,
461 U.S. 95 (1983)........................................................................................................ 24

*Condry v. UnitedHealth Grp., Inc.*,
2021 WL 4225536 (9th Cir. Sept. 16, 2021) .......................................................... 23, 24

*Conservation Force v. Salazar*,
646 F.3d 1240 (9th Cir. 2011) ...................................................................................... 12

*Cordon v. Wachovia Mortg.*,
776 F. Supp. 2d 1029 (N.D. Cal. 2011) ........................................................................ 25

*Douglas v. Cal. Physicians' Serv.*,
2023 WL 6038191 (C.D. Cal. Sept. 6, 2023) ............................................................... 21

*Elias v. Navasartian*,
2017 WL 1013122 (E.D. Cal. Feb. 17, 2017)................................................................ 24

*Ellenburg v. Brockway, Inc.*,
763 F.2d 1091 (9th Cir. 1985) ...................................................................................... 14

*Houston Cas. Co. v. Crum & Forster Ins. Co.*,
2016 WL 4494444 (E.D. Cal. Aug. 25, 2016)............................................................... 12

*Jones v. United Behavioral Health*,
2021 WL 1318679 (N.D. Cal. Mar. 11, 2021)............................................................ 1, 9

*Kev & Cooper, LLC v. Furnish My Place, LLC*,
2021 WL 6618745 (C.D. Cal. Nov. 28, 2021)............................................................... 24

*LYMS, Inc. v. Millimaki*,
2013 WL 1147534 (S.D. Cal. Mar. 19, 2013) .............................................................. 13

*Mathews v. Chevron Corp.*,
362 F.3d 1172 (9th Cir. 2004) ...................................................................................... 13

*McGuire v. Recontrust Co., N.A.*,
2013 WL 5883782 (E.D. Cal. Oct. 30, 2013)................................................................ 25

*Moonbug Entm't Ltd. v. Babybus (Fujian) Network Tech. Co., Ltd.*,
2022 WL 580788 (N.D. Cal. Feb. 25, 2022) ................................................................ 12

*Rees v. PNC Bank, N.A.*,
308 F.R.D. 266 (N.D. Cal. 2015)................................................................................... 12

*Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*,
 85 F.3d 455 (9th Cir. 1996) ................................................................................. 17, 21

*Saroya v. Univ. of Pac.*,
 503 F. Supp. 3d 986 (N.D. Cal. 2020) .......................................................................... 25

*Soo Park v. Thompson*,
 851 F.3d 910 (9th Cir. 2017) ..................................................................................... 12

*Steelman v. Prudential Ins. Co. of Am.*,
 2007 WL 1080656 (E.D. Cal. Apr. 4, 2007) ................................................................. 24

*Taylor v. Yee*,
 780 F.3d 928 (9th Cir. 2015) ..................................................................................... 12

*Ticer v. Young*,
 2018 WL 2088393 (N.D. Cal. May 4, 2018) ................................................................. 25

*United States v. Ritchie*,
 342 F.3d 903 (9th Cir. 2003) ..................................................................................... 22

*Weizman v. Talkspace, Inc.*,
 2023 WL 8461173 (N.D. Cal. Dec. 6, 2023) ................................................... 3, 16, 21, 22

*Whittlestone, Inc. v. Handi-Craft Co.*,
 618 F.3d 970 (9th Cir. 2010) ................................................................................ 24, 25

*Wit v. United Behavioral Health*,
 58 F.4th 1080 (9th Cir. 2023) ...................................................................................... 9

*Wit v. United Behavioral Health*,
 79 F.4th 1068 (9th Cir. 2023) .............................................................................. *passim*

*Wit v. United Behavioral Health*,
 2019 WL 1033730 (N.D. Cal. Mar. 5, 2019) ................................................... 8, 9, 13, 16

*Wit v. United Behavioral Health*,
 2020 WL 6479273 (N.D. Cal. Nov. 3, 2020) .................................................................. 9

*Wit v. United Behavioral Health*,
 2023 WL 8717488 (N.D. Cal. Dec. 18, 2023) ................................................ 1, 10, 11, 18

*Wright v. Or. Metallurgical Corp.*,
 360 F.3d 1090 (9th Cir. 2004) .............................................................................. 16, 17

**Statutes**

29 U.S.C. § 1001(a) ................................................................................................... 15

29 U.S.C. § 1104 ......................................................................................................... 2

29 U.S.C. § 1104(a)(1) ................................................................................................. 7

29 U.S.C. § 1132(a)(1)(B) ..................................................................................... *passim*

29 U.S.C. § 1132(a)(3) ................................................................................ 1, 7, 8, 23, 24

29 U.S.C. § 1133 ........................................................................................... 5, 8, 23, 24

**Rules**

F.R.C.P. 12(b)(6) ................................................................................................................ *passim*

F.R.C.P. 12(f) ........................................................................................................ 1, 12, 24, 25

**Regulations**

29 C.F.R. § 2560.503-1 ............................................................................................ 5, 19, 22

At the heart of UBH's Motion[1] to dismiss Plaintiffs' Amended Class Action Complaint (the "Complaint" or "AC"), ECF No. 59, is its stubborn insistence that plaintiffs asserting claims under Sections (a)(1)(B) and (a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B) & (a)(3), must plead and prove "actual entitlement to benefits," a standard it now repackages as "*actual prejudice*." *See, e.g.*, Mot. 15. Courts—including this one[2]—have repeatedly rejected UBH's cramped concept of the rights and protections ERISA provides to plan participants like Plaintiffs. Yet UBH persists in misrepresenting the law. Its latest gambit is at the center of its Motion here: UBH inaccurately claims that in *Wit v. United Behavioral Health*, 79 F.4th 1068 (9th Cir. 2023) ("*Wit III*"), the Ninth Circuit adopted UBH's arguments and held that causation under ERISA requires proof of *actual* entitlement to benefits. But as Judge Spero ruled on remand in *Wit*, UBH is just "invent[ing] a ruling that was not stated by the panel" in *Wit III*. Order on Scope of Remand, *Wit v. United Behavioral Health*, No. 14-CV-02346-JCS, 2023 WL 8717488, at *26 (N.D. Cal. Dec. 18, 2023) (the "Scope Order"). Despite that rebuke, UBH now seeks dismissal of Plaintiffs' claims in this case based on the same invented ruling and inapposite legal standard.

Applying the correct legal standard requires UBH's Motion to be denied. Plaintiffs plausibly plead that UBH deliberately developed self-serving, restrictive Guidelines and a plan-violating "bundling" policy and used them to deny Plaintiffs' requests for coverage, causing Plaintiffs substantial, concrete injuries. ERISA provides causes of action for Plaintiffs to challenge this misconduct, and authorizes a wide range of equitable and legal remedies if Plaintiffs' claims succeed. All of UBH's arguments to the contrary depend on misdirection, mischaracterizations, and misrepresentations.

---

[1] *See* Def. United Behavioral Health's Notice of Mot. and Mot. to Dismiss Pursuant to F.R.C.P. 12(b)(6) or, in the Alternative, to Strike Pursuant to F.R.C.P. 12(f); Mem. of Points and Authorities in Support Thereof (the "Motion"), ECF No. 78.

[2] For example, in its opinion granting class certification in a case closely related to this one, this Court rejected UBH's "wishful view of ERISA injury and causation," holding instead that under established Ninth Circuit law, "plaintiff's only 'but-for' burden is to show that but for the application of the [Guidelines], coverage requests would have been processed in an ERISA-compliant manner." *Jones v. United Behavioral Health*, No. 19-CV-06999-RS, 2021 WL 1318679, at *5-6 (N.D. Cal. Mar. 11, 2021) (Seeborg, J.) ("*Jones* Class Cert. Order").

## I.    Background

### A.    Facts Alleged in the Amended Complaint

The individual Plaintiffs in this action seek redress for UBH's breaches of fiduciary duty and violations of ERISA.[3] The case arises from UBH's deliberate development of internal policies designed to reduce the number and value of mental health and substance use disorder (together, "behavioral health") benefit claims UBH would approve, thereby serving the financial interests of UBH and its affiliates. AC ¶¶ 1-2, 44-60. The UBH policies at issue in this case all disregard or directly flout the terms of the Plaintiffs' employer-sponsored health benefit plans (the "Plans"), *id.* ¶¶ 27-60, 66-74, 215, 222-24, and were developed to serve UBH's interests rather than those of the plan members. *Id.* ¶¶ 1, 59-60, 209-210. As a result, the policies all breach the fiduciary duties UBH owes to all ERISA plan members, including Plaintiffs, *id.* ¶¶ 19-25, 207-210, 230-231, and by using those policies to deny Plaintiffs' benefit claims, UBH abused its discretion and violated ERISA. *Id.* ¶¶ 215-216, 222-225, 230-231.

#### 1.    UBH is a Fiduciary of Plaintiffs' Plans.

UBH is the "behavioral health administrator" for all of the Plaintiffs' Plans. AC ¶¶ 19-20. The named Claims Administrator for each of Plaintiffs' Plans "delegated to UBH the responsibility for administering behavioral health benefits, including interpreting the written Plan terms, conditions, limitations, and exclusions with respect to mental health and substance use disorder benefits." AC ¶ 20. Because UBH exercises its discretion in administering behavioral health benefits, "UBH is a fiduciary within the meaning of ERISA, 29 U.S.C. § 1104." AC ¶ 23.

#### 2.    Plaintiffs' Plans Cover Behavioral Health Treatment, Subject to Plan Exclusions and Limitations.

Plaintiffs are participants and beneficiaries of employer-sponsored health benefit plans governed by ERISA. AC ¶¶ 5-10, 26. Plaintiffs' Plans all "cover treatment for sickness, injury, mental illness, and substance use disorders." *Id.* ¶ 27. The Plan terms expressly provide for coverage of a spectrum of services to treat behavioral health conditions, including individual and

---

[3] This case is a putative class action, but the only question UBH's Rule 12(b)(6) motion presents is whether the individual Plaintiffs have plausibly stated their *own* claims.

group therapy, diagnostic evaluations, medication management, case management, and crisis intervention, *id.* ¶ 29, as well as services at the residential treatment, partial hospitalization, and intensive outpatient levels of care. *Id.* ¶¶ 27-28; *see also* Decl. of Ngoc Han S. Nguyen in Support of Def.'s Mot. to Dismiss ("Nguyen Decl."), ECF No. 78-2, Exhibit A (ECF No. 78-3) (summary plan description ("SPD") for Plaintiff Beach's Plan) at 54-55, 67. None of the Plaintiffs' Plans conditions coverage for behavioral health treatment on any "bundling" requirement or limitation. AC ¶¶ 30-31; *see also* Nguyen Decl., Ex. A at 78-92.

### 3.    UBH Implemented the Plans' Generally Accepted Standards of Care Requirement Through its Level of Care Guidelines.

Each of the Plaintiffs' Plans required, as one essential prerequisite for coverage, "that services must be consistent with generally accepted standards of care, or 'GASC.'" AC ¶ 32; *see also id.* ¶¶ 3, 33-37. Plaintiffs refer to this prerequisite as the Plans' "GASC Requirement." AC ¶¶ 3, 32. As the Plans' behavioral health claims administrator, UBH developed its own, internal Level of Care Guidelines ("LOCGs" or the "Guidelines") for its use in implementing the Plans' GASC Requirement. AC ¶¶ 1-3, 44-45, 50, 56, 215.

### 4.    UBH Deliberately Made its Level of Care Guidelines More Restrictive than the Plans' GASC Requirement.

UBH was well aware of the generally accepted standards for matching patients with the level of care that is most appropriate and effective for treating their behavioral health conditions. AC ¶¶ 38-43. In creating its Guidelines, however, UBH replaced "generally accepted standards of care" with much more restrictive coverage criteria that narrowed the scope of coverage available for residential treatment to acute conditions and symptoms only. AC ¶¶ 3, 44-47, 49-51, 53, 215.[4] UBH did so deliberately, for the express purpose of enabling it to deny more claims and thereby advance its own financial interests, rather than acting solely in the interest of the plan members.

---

[4] Both the "Common Criteria" and the residential treatment-specific criteria the 2018 and 2019 LOCGs were excessively restrictive and inconsistent with the Plans' GASC Requirement. AC ¶¶ 54-55. UBH alleges that the LOCGs contained other (unspecified) provisions Plaintiffs do not challenge, Mot. 17, but UBH does not (and could not) allege those sections were relevant to the Plaintiffs' denials. Even if it did, the Court must disregard UBH's alternative factual narrative. *Weizman v. Talkspace, Inc.*, No. 23-CV-00912-PCP, 2023 WL 8461173, at *2 (N.D. Cal. Dec. 6, 2023) ("On a Rule 12(b)(6) motion, the Court must take the factual allegations in the complaint as true without considering competing factual allegations presented by the other party.").

1    AC ¶¶ 2, 49, 51-53, 59-60, 215.

2    **5.    UBH Denied the Plaintiffs' Requests for Coverage of Residential
        Treatment Pursuant to its LOCGs.**

3

4        Each of the Plaintiffs sought coverage under his or her Plan for residential treatment of a

5    behavioral health condition. AC ¶¶ 75-76 (Beach); 101 (Doe); 121 (Loe); 137 (Poe); 154 (Roe);

6    169 (Zoe). UBH denied each Plaintiff's request, and provided written notice to each Plaintiff of

7    the reasons for its denial. AC ¶¶ 76-78 (Beach); 101-103 (Doe); 121-22 (Loe); 137-38 (Poe); 155

8    (Roe); 170 (Zoe). Each time, UBH gave only one reason for denying coverage: the Plaintiff's

9    failure to satisfy UBH's LOCGs. *Id.* ¶¶ 77-78 (Beach); 102-103 (Doe); 122-23 (Loe); 138-39

10   (Poe); 155-56 (Roe); 170-71 (Zoe). The Plaintiffs all exhausted their internal appeals, each time

11   with the same result. AC ¶¶ 80-88 (Beach); 106-115 (Doe); 125-31 (Loe); 141-147 (Poe); 158-

12   162 (Roe); 172-78 (Zoe). Thus, UBH's use of its overly-narrow LOCGs was the sole and decisive

13   basis for its denial of coverage to each of the Plaintiffs.

14   **6.    UBH Imposed a Bundling Requirement on Plaintiffs' Claims, Even
        Though No Such Requirement Appears in the Plans.**

15       UBH also subjected Plaintiffs' benefit claims to its "Facility-Based Behavioral Health

16   Program Reimbursement Policy," which is inconsistent with the Plans' written terms granting

17   coverage for medically necessary services, and which UBH also developed to serve its own

18   financial interests rather than for the sole purpose of providing benefits under the Plaintiffs' Plans

19   as ERISA requires. AC ¶¶ 2, 4. (For the sake of brevity, Plaintiffs refer to this UBH policy herein

20   as the "Bundling Policy.") Pursuant to its Bundling Policy, UBH insists that facilities submit

21   claims for reimbursement for facility-based care using a "daily rate," which is a bundled per-diem

22   charge that purportedly accounts for all services provided for treatment at a given level of care.

23   *Id.* ¶¶ 4, 66-68. UBH imposes its Bundling Policy even though it knows that higher levels of care,

24   like residential treatment, necessarily subsume all the component services provided at lower

25   levels of care, including PHP, IOP, and the individual services enumerated in the Plaintiffs'

26   Plans. AC ¶¶ 4, 67-68, 71-72, 79, 105, 124, 150. Yet when UBH concludes that the residential

27   treatment level of care is not medically necessary, UBH denies ***all*** coverage for ***all*** services—

28   even when it expressly opines that some of the services bundled into the per diem charge ***are***

medically necessary for the member—rather than considering the component services on an un-bundled basis and approving coverage for them. AC ¶ 4, 69, 72-73.

Pursuant to its Bundling Policy, UBH denied each Plaintiff's request for coverage in its entirety, even though UBH found that some of the component services subsumed within the residential treatment level of care were medically necessary for each of the Plaintiffs.[5] *Id.* ¶¶ 4, 72-74, 95, 98-100, 118-20, 134-36, 151-53, 165-68, 180-83; *see also id.* ¶¶ 78-79 (full denial even though PHP medically necessary for Beach's daughter), ¶¶ 83-84 (same), ¶¶ 88-89 (same); ¶¶ 103-04 (same as to Doe); ¶¶ 107-08 (full denial even though IOP medically necessary for Doe); ¶¶ 110-11 (same); ¶¶ 113-14 (same), ¶¶ 123-24 (full denial even though PHP medically necessary for Loe's son), ¶¶ 126-27 (same), ¶¶ 129-30 (same), ¶¶ 139-40 (full denial even though outpatient services medically necessary for Poe), ¶¶ 156-57 (full denial even though PHP medically necessary for Roe), ¶¶ 159-60 (same), ¶¶ 170-71 (same as to Zoe), ¶¶ 173-74 (same). In fact, even when Plaintiff Poe expressly requested that UBH provide coverage for medically-necessary component services on an un-bundled basis, UBH refused to do so and affirmed its denial, in full, of all the services Poe received. AC ¶¶ 144-46, 149-51.

In short, UBH denied the Plaintiffs' claims for services that were covered under their Plans and admittedly medically necessary for each Plaintiff, based solely on UBH's separate, self-serving Bundling Policy, and not on any Plan term. AC ¶¶ 84, 98-100, 118-20, 134-36, 151-53, 166-68, 181-83, 223-24. In so doing, UBH effectively imposed on Plaintiffs' claims a new "Bundling Policy Exclusion" that does not otherwise exist in Plaintiffs' plans.

### 7.    UBH Flouted its Duty to Establish and Follow Reasonable Claims Processing Procedures.

ERISA and its implementing regulations require UBH to provide adequate written notice of any benefit denial, to allow the affected plan participant a "reasonable opportunity" for a "full and fair review" of the denial. AC ¶ 25 (citing 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1).

---

[5] UBH incorrectly asserts that "no Plaintiff alleges that they submitted any claims for reimbursement to which the [Bundling Policy] would have applied." Mot. at 23. But Plaintiffs allege that UBH applied its Bundling Policy to all facility-based levels of care, including the residential treatment level of care, for which Plaintiffs submitted benefit claims. AC ¶ 66-68.

Adequate written notice must identify the internal policies on which a denial is based and describe any additional information needed for a participant to perfect the claim. *Id.* In its denial letters to the Plaintiffs, however, UBH failed to inform Plaintiffs that UBH would approve coverage for any of the component services UBH itself acknowledged each Plaintiff needed. AC ¶¶ 99, 135, 152, 167, 182. Nor did UBH provide any instructions on how the Plaintiffs could perfect their claims for such services. ¶¶ 99, 135, 152, 167, 182. Indeed, UBH did not even reveal that the reason it was denying coverage in full for all services was because it had applied its Bundling Policy to the claim. ¶¶ 100, 136, 153, 168, 183. As a result, Plaintiffs were left in the dark about the real reason UBH denied coverage for all of their treatment, even though their Plans purport to cover services throughout the full continuum of care.

### 8.    UBH's Misconduct Harmed the Plaintiffs.

UBH's development of its Guidelines and Bundling Policy to serve its own interests, rather than Plaintiffs' interests, and its adoption of the Guidelines and Bundling Policy as its standard coverage criteria, caused Plaintiffs to suffer multiple injuries:

- Plaintiffs were deprived of "their right to a full and fair review of their requests for benefits," the substantive protection at the heart of ERISA. AC ¶ 184; *see also id.* ¶¶ 99, 119, 135, 152, 167, 182, 216, 225.
- UBH's self-serving policies "presented a material risk" (a) to "Plaintiffs' interest in the benefits promised by their employer-sponsored Plans," (b) to "Plaintiffs' ERISA-defined right to have their plan-conferred benefits interpreted and administered in their best interests and in accordance with their Plan terms," and (c) "that their claims will be administered under a set of Guidelines and Reimbursement Policies that impermissibly narrow the scope of their benefits." *Id.* ¶ 184, *see also id.* ¶¶ 100, 120, 136, 152, 168, 183.
- UBH's self-serving policies also "have made and continue to make it impossible for Plaintiffs to know the scope of coverage their Plans will actually provide," *id.* ¶ 184, since the policies are designed to narrow coverage and minimize benefit approvals notwithstanding the Plan terms. AC ¶¶ 2, 50-51, 55, 209-210.

Furthermore, UBH's use of its unlawful Guidelines and Bundling Policy to deny the Plaintiffs' requests for benefits caused each of the Plaintiffs additional harm because "each of the Plaintiffs incurred substantial, unreimbursed out-of-pocket expense as a result of UBH's unlawful denials." AC ¶ 184; *see also id.* ¶¶ 3-4, 22, 93, 117, 133, 148, 164, 179. And, in addition to her monetary losses, Plaintiff Beach was forced to remove her daughter from residential treatment prematurely because of UBH's wrongful denial of coverage, leading to a substantial deterioration

1    in her daughter's condition. AC ¶¶ 94-97.

2         UBH's failure to provide adequate notice of its reason for denying the Plaintiffs' benefit

3    claims in full further injured each of the Plaintiffs by depriving them of any meaningful

4    opportunity to appeal UBH's use of its Bundling Policy or to perfect their claims for benefits for

5    the component services. AC ¶¶ 99, 119, 135, 144-45, 152, 167, 182, 184, 231.

6         **B.    The Plaintiffs' Claims and Legal Theories**

7         Based on the factual allegations summarized above, Plaintiffs assert four distinct legal

8    claims under ERISA, as follows:

9         *Count I: Breach of Fiduciary Duty*. ERISA imposes strict fiduciary duties of loyalty and

10   care on the administrators of ERISA plans, requiring among other things, that such fiduciaries

11   "discharge [their] duties with respect to a plan . . . solely in the interest of the participants and

12   beneficiaries" of the plan and "for the exclusive purpose of. . .  providing benefits" to the plan

13   members, and "defraying reasonable expenses of administering the plan," and also with "care,

14   skill, prudence, and diligence." 29 U.S.C. § 1104(a)(1)(A)-(B).

15        Plaintiffs allege that UBH breached its ERISA fiduciary duties of loyalty and care in two

16   distinct ways. *See* AC ¶¶ 207-210; *see also* §§ I.A.1, 4, 6, *supra*. First, acting in its own financial

17   self-interest, UBH deliberately designed its LOCGs to be more restrictive than the GASC

18   Requirement the LOCGs were supposed to implement. AC ¶¶ 2, 50-51, 53, 209. Second, UBH

19   developed and applied its Bundling Policy for the purpose of reducing "benefit expense" to save

20   money for itself and its plan-sponsor customers, rather than administering benefits solely in the

21   plan participants' interest and for the purpose of *providing* benefits to them. *Id*. ¶¶ 2, 71, 210.

22   Plaintiffs assert their breach of fiduciary duty claims under 29 U.S.C. § 1132(a)(3) (hereafter,

23   "§ (a)(3)"). AC ¶ 211.

24        *Count II: Wrongful Denials Pursuant to UBH's Guidelines*. *See* AC ¶ 215; *see also*

25   §§ I.A.2-5, *supra*. Count II alleges that UBH abused its discretion by denying Plaintiffs' benefit

26   claims pursuant to Guidelines that were inconsistent with the Plans term the Guidelines purported

27   to implement (i.e., the GASC Requirement). Plaintiffs assert their wrongful denial claims under

28   29 U.S.C. § 1132(a)(1)(B) (hereafter, "§ (a)(1)(B)") and, in the alternative, § (a)(3). AC ¶ 218.

*Count III: Wrongful Denials Pursuant to UBH's Bundling Policy*. *See* AC ¶ 222-24; *see also* §§ I.A.2, 6, *supra*. Count III alleges that UBH improperly denied benefits for Plaintiffs' covered services based on a non-existent "bundling" requirement it imposed through its Bundling Policy. Plaintiffs assert Count III under § (a)(1)(B) and, in the alternative, § (a)(3). AC ¶ 226.

*Count IV [6]: Failure to Follow Reasonable Claims Processing Procedures*. *See* AC ¶¶ 230-31; *see also* § I.A.7, *supra*. Count IV alleges that UBH violated its statutory obligation to a provide full and fair review of its denials, *see* 29 U.S.C. § 1133 ("§ 1133"), by failing to disclose in its denial letters its reliance on its Bundling Policy to deny Plaintiffs' claims for covered component services and how to perfect their claims for coverage of the component services. Plaintiffs bring Count IV under § (a)(3). AC ¶ 232.

## C.    The Relief Plaintiffs Seek for their Claims

As relief for all four of their claims, Plaintiffs seek an appropriate combination of the remedies available under §§ (a)(1)(B) and (a)(3), including:

- declaratory relief, AC at 50 (Prayer for Relief) ¶¶ D, F;
- forward-looking injunctive relief, *id.* at ¶¶ E, G; and
- other appropriate equitable relief, such as a monetary award based on disgorgement, restitution, surcharge or another basis, *id.* at ¶ J.

*See also* AC ¶¶ 212, 219, 227, 233. In addition, and as specified in the Amended Complaint, as relief for their wrongful benefit denial claims *only* (i.e., Counts II and III), Plaintiffs seek injunctive relief in the form of an order requiring UBH to reprocess Plaintiffs' wrongfully-denied requests for benefits. *Id.* at ¶¶ 219, 227; *see also* AC at 50 (Prayer for Relief) ¶¶ H, I.

## D.    The *Wit* Litigation and its Relationship to this Case

As the Court knows, this case stems from two other certified class actions pending in this Court: *Wit v. United Behavioral Health* (No. 3:14-CV-02346-JCS) and *Jones v. United Behavioral Health* (No. 3:19-cv-06999-RS). The *Wit* case concerns UBH's misconduct from May 22, 2011 through June 1, 2017, and involves challenges to the 2011 through 2017 editions of UBH's LOCGs. *See Wit v. United Behavioral Health*, No. 14-cv-02346-JCS, 2019 WL

---

[6] As filed, the Amended Complaint erroneously labels Count IV as Count III. AC at 48.

1    1033730, at *4 (¶ 13) (N.D. Cal. Mar. 5, 2019) ("*Wit* FFCL"). *Jones* concerns identical

2    challenges to the 2017 versions of the Guidelines, covering a period from June 2, 2017 through

3    February 7, 2018. *See Jones* Class Cert. Order, 2021 WL 1318679, *1. The Guideline claims

4    here pick up after *Wit* and *Jones*, asserting challenges to UBH's 2018 and 2019 Guidelines,

5    which are only slightly edited from the 2017 edition at issue in *Wit* and *Jones*. *See* AC ¶¶ 47–57.

6         After trial, the *Wit* court found UBH liable for breaching its fiduciary duties by placing its

7    own financial interests ahead of its members' interests, and of violating ERISA and the class

8    members' plans by using its excessively restrictive LOCGs to deny coverage to tens of thousands

9    of its members. *Wit* FFCL, 2019 WL 1033730, at *51-55 (¶¶ 193-216). To remedy UBH's

10   longstanding pattern of fiduciary breaches and ERISA violations, the *Wit* court issued a

11   declaratory judgment and prospective injunctive relief, as well as retrospective relief in the form

12   of an injunction requiring UBH to "reprocess" the claims it had improperly denied by applying a

13   plan-violating standard. *Wit v. United Behavioral Health*, No. 14-cv-02346-JCS, 2020 WL

14   6479273, at *48-56 (N.D. Cal. Nov. 3, 2020) ("*Wit* Remedies Order"). UBH appealed.

15                       **1.      The Ninth Circuit's Ruling in *Wit***

16        On August 22, 2023, the Ninth Circuit issued the third iteration of its ruling on UBH's

17   appeal. *Wit III*, 79 F.4th at 1068.[7] As it had in two prior decisions, the Panel first rejected UBH's

18   Article III standing argument, finding with respect to **both** the *Wit* Plaintiffs' claims for breach of

19   fiduciary duty and for wrongful benefit denials that the plaintiffs had suffered distinct, concrete,

20   particularized injuries-in-fact that were "fairly traceable" to UBH's misconduct. *Id.* at 1082-83.

21        Addressing the *Wit* class certification order as to the denial of benefits claim only, the

22   Panel concluded "that the district court erred in granting class certification here based on its

23   determination that the class members were entitled to have their claims reprocessed regardless of

24

25   [7] The Ninth Circuit panel (the "Panel") initially issued a 7-page, unsigned and unpublished
     Memorandum disposition reversing the judgment. No. 20-17363 (9th Cir. Mar. 22, 2022), App.
26   ECF No. 92-1 ("*Wit I*"). After the *Wit* Plaintiffs sought rehearing en banc, the Panel withdrew the
     disposition and issued an opinion for publication, which affirmed in part and reversed in part. *Wit*
27   *v. United Behavioral Health*, 58 F.4th 1080 (9th Cir. 2023) (hereafter, "*Wit II*"). The *Wit*
     Plaintiffs again sought rehearing en banc, which resulted in the August 22, 2023 opinion
28   affirming in part, reversing in part, and remanding the case. *Wit III*, 79 F.4th at 1076.

the individual circumstances at issue in their claims." *Id.* at 1084. Reasoning that "remand" to a plan administrator is available as relief for an improper denial of benefits only when the participant "might be entitled to benefits under the proper standard," *id.*, the Panel identified two groups of *Wit* Class members who would not meet that test: (1) those whose claims were denied based on "unchallenged provisions" of the Guidelines, *id.* at 1085, and (2) those whose claims were denied "*in part* based on the Guidelines" but also for independent reasons. *Id.* The Panel therefore reversed the certification of the *Wit* Classes' denial of benefits claim, squarely predicating that reversal on the fact that the Classes were overbroad for purposes of the reprocessing relief. *Id.* at 1086 (reversing class certification "[b]ecause the classes were not limited to those claimants whose claims were denied based only on the challenged provisions of the Guidelines"). *See also* Scope Order, 2023 WL 8717488, at *26-27 (explaining that the Panel's ruling on class certification "did not assess . . . the sufficiency of the evidence as to the merits of the denial of benefits claim as to a narrower subclass.")

On the merits, the Panel upheld the district court's findings that UBH had a financial conflict of interest, ruling they were "not clearly erroneous." *Id.* at 1087. The Panel acknowledged a dispute between the parties as to whether the district court had misinterpreted the plans to require coverage of *all* services that were consistent with GASC regardless of other plan terms. *Id.* at 1087-88. Rather than resolve that dispute, the Panel issued a conditional ruling on the merits of the denial of benefits claim. The Panel held that "it was not error for the district court to rule that UBH abused its discretion because the challenged portions of the Guidelines did not *accurately* reflect GASC." *Id.* at 1088 n.6. But "to the extent" the district court "interpreted the Plans to require coverage for all care consistent with GASC," it erred. *Id.* at 1088. Thus, the Panel reversed the judgment on the denial of benefits claim only "*to the extent* the district court concluded the Plans require coverage for all care consistent with GASC." *Id.* (emphasis added). *See also* Scope Order, 2023 WL 8717488, at *26.

The Panel noted that the judgment on the breach of fiduciary duty claim also "relied heavily" on the "conclusion that the Guidelines impermissibly deviated from GASC," but acknowledged that other findings were also relevant to the ruling on that claim. *Id.* at 1088 n.7. In

particular, the Panel pointed to the district court's findings, "among other things, that financial incentives infected UBH's Guideline development process and that UBH developed the Guidelines with a view toward its own interests," *id.*, and stated that its "decision does not disturb these findings to the extent they were not intertwined with an incorrect interpretation of the Plans." *Id.* The Panel, accordingly, reversed the judgment on the breach of fiduciary duty claim only "*to the extent*" it was based on the "erroneous interpretation of the Plans" that the Panel had identified. *Id.* at 1089 (emphasis added); *see also* Scope Order, 2023 WL 8717488, at *26.[8]

The Panel did not direct the district court to enter judgment in favor of either party on either claim. Nor did the Panel express a view about whether a narrower denial of benefits subclass should be certified. Instead, it simply remanded the case back to the district court for further proceedings. *Id.* at 1090; *see also* Scope Order, 2023 WL 8717488, at *26-27.

### 2.    The *Wit* District Court's Order on the Scope of Remand

On remand in *Wit*, the parties sharply disagreed about the scope of the district court's authority to conduct further proceedings. Following briefing, the district court in *Wit* issued an Order on Scope of Remand, in which Magistrate Judge Joseph C. Spero set forth his understanding of the Ninth Circuit's ruling and the tasks to be completed on remand. *See* Scope Order, 2023 WL 8717488, at *25-30. Significantly, Judge Spero rejected UBH's arguments (among others) that Wit *III* held that the district court "erred in finding that UBH was required to 'cover all treatment that was consistent with GASC,'" and that there had been a "failure of proof as to causation with respect to the denial of benefits claim," concluding "that UBH's interpretation of the panel's decisions on these questions goes beyond what the panel stated or implied." *Id.* at *25; *see also id.* at *25-27 (explaining reasoning). Nevertheless, UBH largely bases its motion to dismiss on the very same specious interpretation of the Ninth Circuit's ruling. *See, e.g.*, Mot. 10-11.

---

[8] The Panel also noted that the district court did not address whether any exhaustion requirements apply to the *Wit* Plaintiffs' breach of fiduciary claim, and directed the district court to answer that question on remand. *Id.* at 1089-90.

1   **II.**    **Legal Standards**

2       A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal

3   sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011).

4   "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient

5   facts alleged to support a cognizable legal theory." *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir.

6   2015). The Court must accept the plaintiff's allegations of fact as true and must construe them in

7   the light most favorable to the plaintiff. *Soo Park v. Thompson*, 851 F.3d 910, 918 (9th Cir.

8   2017); *see also, e.g.*, *Taylor*, 780 F.3d at 935. The complaint need only contain "sufficient

9   factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

10   U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is

11   facially plausible when it "allows the court to draw the reasonable inference that the defendant is

12   liable for the misconduct alleged." *Id.*; *see also Twombly*, 550 U.S. at 570 (complaint need only

13   "nudge[]" the plaintiff's claims "across the line from conceivable to plausible").

14       Motions to strike pursuant to Federal Rule of Civil Procedure 12(f) "are generally

15   disfavored because the motions may be used as delaying tactics and because of the strong policy

16   favoring resolution on the merits." *Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*,

17   718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010). For that reason, "[i]f there is any doubt whether

18   the challenged matter might bear on an issue in the litigation, the motion to strike should be

19   denied, and assessment of the sufficiency of the allegations left for adjudication on the merits."

20   *Rees v. PNC Bank, N.A.*, 308 F.R.D. 266, 271 (N.D. Cal. 2015); *see also Moonbug Entm't Ltd. v.*

21   *Babybus (Fujian) Network Tech. Co., Ltd.*, No. 21-CV-06536-EMC, 2022 WL 580788, at *3

22   (N.D. Cal. Feb. 25, 2022) (motions to strike "should only be granted if the matter sought to be

23   stricken clearly has no possible bearing on the subject matter of the litigation") (citing cases). In

24   addition, "[g]iven their disfavored status, courts often require a showing of prejudice by the

25   moving party before granting the requested relief." *Houston Cas. Co. v. Crum & Forster Ins.*

26   *Co.*, No. 1:16-CV-535-LJO-EPG, 2016 WL 4494444, at *3 (E.D. Cal. Aug. 25, 2016).

27   **III.**    **Argument**

28       UBH's mishmash of arguments for dismissal mischaracterizes or ignores Plaintiffs'

factual allegations, conflates Plaintiffs' claims with one form of relief they seek, and misrepresents the legal authority on which UBH relies—chiefly, the Ninth Circuit's decision in *Wit III*. This barrage takes aim at a straw man, however. Plaintiffs' *actual* Amended Complaint is more than sufficient to state plausible claims to relief under ERISA for UBH's breaches of fiduciary duty, arbitrary and capricious benefit denials, and inadequate claims procedures.

### A.    Count I Plausibly Pleads a Claim for Breach of Fiduciary Duty.

To state a claim for breach of fiduciary duty under ERISA, Plaintiffs must plausibly allege that: "(1) UBH was a Plan fiduciary; (2) UBH breached its fiduciary duty; and (3) the breach caused harm to Plaintiffs." *Wit* FFCL, 2019 WL 1033730, at *51 (¶ 196) (citing, *inter alia*, *LYMS, Inc. v. Millimaki*, No. 08-CV-1210-GPC-NLS, 2013 WL 1147534, at *9 (S.D. Cal. Mar. 19, 2013), *supplemented*, No. 08-CV-1210-GPC-NLS, 2013 WL 3353838 (S.D. Cal. July 2, 2013); *see also, e.g.*, *Mathews v. Chevron Corp.*, 362 F.3d 1172, 1178 (9th Cir. 2004).

#### 1.    Plaintiffs Plausibly Pleaded that UBH's Fiduciary Breaches Caused Harm to Plaintiffs.

UBH's principal argument for dismissal of Plaintiffs' breach of fiduciary duty claims is that "Plaintiffs do not allege **any** 'substantive harm'" arising from UBH's disloyal and imprudent conduct. Mot. 18-19 (emphasis added); *see also id.* at 2, 23.[9] This ignores and misstates the relevant factual allegations.

Plaintiffs allege—with specificity—the multiple ways that UBH's development and adoption of its self-serving Guidelines and Bundling Policy harmed Plaintiffs:

> UBH's development of its Guidelines and [Bundling Policy] in its own interests, rather than in the interests of the participants and beneficiaries of the Plans, and its adoption of those Guidelines and Policy as its standard coverage criteria, among other harms, deprived Plaintiffs of their right to a full and fair review of their requests for benefits; presented a material risk to Plaintiffs' interest in the benefits promised by their employer-sponsored Plans, including a material risk to Plaintiffs' ERISA-defined right to have their plan-conferred benefits interpreted and administered in their best interests and in accordance with their Plan terms; a material risk that their claims will be administered under a set of Guidelines and Reimbursement Policies that impermissibly narrow the scope of their benefits; and the present harm that UBH's self-serving internal policies have made and continue

---

[9] UBH does not dispute that Plaintiffs plausibly allege that UBH is a fiduciary with respect to each of their Plans—nor could it. *See* § I.A.1, *supra*; AC ¶¶ 1, 13, 19-20, 23.

1   to make it impossible for Plaintiffs to know the scope of coverage their Plans will
2   actually provide.

3   AC ¶ 184; *see also* § I.A.8, *supra*. Plaintiffs' allegations closely track the Ninth Circuit's ruling

4   in *Wit III*, which found a nearly identical list of harms were caused by UBH's fiduciary breaches

5   in developing its self-interested Guidelines:

6       . . . a material risk of harm to Plaintiffs' ERISA-defined right to have their
        contractual benefits interpreted and administered in their best interest and in
7       accordance with their Plan terms. Their alleged harm further includes the risk that
        their claims will be administered under a set of Guidelines that impermissibly
8       narrows the scope of their benefits and also includes the present harm of not
        knowing the scope of the coverage their Plans provide. The latter implicates
9       Plaintiffs' ability to make informed decisions about the need to purchase alternative
        coverage and the ability to know whether they are paying for unnecessary coverage.

10  79 F.4th at 1082-83. The Panel held, moreover, that these harms were "concrete" and not "purely

11  procedural." 79 F.4th at 1082.[10] UBH ignores this *Wit III* holding entirely.

12      UBH first pretends Plaintiffs' injury allegations do not exist, falsely asserting that the

13  "*only harm* Plaintiffs allege" with respect to their breach of fiduciary duty claim is UBH's

14  "unlawful denial[]" of their claims. Mot. 18-19; *see also id*. at 23 (discussing only harms from

15  improper benefit denials). This blatantly misstates Plaintiffs' allegations, which clearly

16  distinguish between injuries arising from UBH's fiduciary breaches, AC ¶ 184 at lines 6-17

17  (quoted above), and injuries arising from UBH's wrongful denials of benefits, AC ¶ 184 at lines

18  18-20 (alleging monetary loss and, in Plaintiff Beach's case, premature truncation of treatment).

19      UBH only addresses Plaintiffs' actual injury allegations in a footnote, urging the Court to

20  disregard them because "all of the purported harm at issue in this case flow [sic] from Plaintiffs'

21  alleged right to plan benefits." Mot. 18 n.11. But that is a non-sequitur. *All* of an ERISA plan

22  participant's rights and interests, at some level, arise from their "right to plan benefits"—after

23
    ───────────────
24  [10] Disregarding the Panel's ruling in *Wit III*, UBH instead relies on *Ellenburg v. Brockway, Inc.*,
    763 F.2d 1091, 1097 (9th Cir. 1985) to support its contention that Plaintiffs assert only
25  "procedural" harms. *See* Mot. 18. *Ellenburg*, however, is nothing like this case. The plaintiff in
    that case lied about his age to try to establish his eligibility for early retirement benefits. 763 F.2d
26  at 1094-95. Although the plan promptly notified him that "his eligibility was subject to question,"
    its actual notification of denial was nine months late. *Id*. at 1096. The court found that
27  "[p]rocedural defect" did not entitle that plaintiff to a substantive remedy, given his "ineligibility
    for early retirement benefits and his bad faith in applying for such benefits." *Id*. Unlike in
28  *Ellenburg*, the Plaintiffs here allege substantive injuries nearly identical to those the Ninth Circuit
    expressly held were not "purely procedural." *Wit III*, 79 F.4th at 1082.

1  all, protecting employees' interests in those benefits is ERISA's whole purpose. *See, e.g.*, 29

2  U.S.C. § 1001(a). The real question UBH seems to be presenting is whether Plaintiffs have

3  alleged any cognizable harms flowing from UBH's breaches of fiduciary duty, as distinct from

4  its improper benefit denials. The answer is yes, Plaintiffs have plausibly alleged such harm, for

5  the exact reasons the Ninth Circuit identified in *Wit III. See, e.g.*, *Wit III*, 79 F.4th at 1082

6  (holding *Wit* Plaintiffs "sufficiently alleged a concrete injury" *because* "ERISA's core function is

7  to 'protect contractually defined benefits,'" and "UBH's alleged fiduciary violation presents a

8  material risk of harm to Plaintiffs' interest in their contractual benefits.").

9          **2.    Plaintiffs Plausibly Plead that UBH Breached its Fiduciary Duties.**

10         UBH's half-hearted attempt to argue that the Plaintiffs failed to allege a fiduciary breach,

11  Mot. 19, falls flat. UBH contends that it did not owe a fiduciary duty "to develop 'standard

12  medical necessity criteria' … that were solely consistent with GASC, as opposed to the terms of

13  Plaintiffs' Plans as a whole." *Id*. But that is not Plaintiffs' claim—rather, Plaintiffs allege that

14  UBH's Guidelines reflected its interpretation of the Plans' GASC Requirement, not other terms

15  in the Plans, and certainly not all of them in combination.

16         Plaintiffs allege that UBH breached its duty to administer Plaintiffs' Plans with "'care,

17  skill, prudence, and diligence'" by developing Guidelines *to implement the Plans' GASC*

18  *Requirement* that were pervasively more restrictive than GASC (i.e., the Plan-dictated standard),

19  even though UBH knew exactly what the generally accepted standards of care are. *See* § I.A.2-4,

20  *supra*; *see also* AC ¶¶ 24, 38-43, 54-55. Plaintiffs also allege that UBH breached its fiduciary

21  duty to carry out its claims administration responsibilities "solely in the interests of the

22  participants and beneficiaries" of the Plans and "for the exclusive purpose of… providing

23  benefits to participants and beneficiaries" when it acted in its own financial self-interest by

24  deliberately developing claims administration policies designed to *avoid* providing benefits to

25  Plan members and instead to increase revenues for UBH and its affiliates. *See* § I.A.4, *supra*; *see*

26  *also, e.g.*, AC ¶¶ 2, 24, 42, 49, 51-53, 59-60. UBH simply ignores all of these allegations, which

27  more than plausibly allege that UBH breached its fiduciary duties of care and loyalty.

28         UBH would rather focus on its alternative factual assertion that the LOCGs actually

1   reflected the Plans "as a whole," which UBH contends immunizes it from liability for breaching

2   its fiduciary duties. Mot. 19 (asserting UBH "cannot have breached any fiduciary duties so long

3   as it 'complied with the [p]lan[s'] lawful terms' in determining coverage") (quoting *Wright v.*

4   *Or. Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004)); *see also* Mot. 23 (same argument

5   as to Bundling Policy). UBH even implies that the Ninth Circuit held in *Wit III* that "UBH

6   cannot be liable for developing and using its former LOCGs so long as the LOCGs 'give[] effect

7   to all the Plan provisions." Mot. 19 (quoting *Wit III*, 79 F.4th at 1088). But *Wit III* held no such

8   thing. The words UBH quotes refer to "UBH's interpretation that the plans do not require

9   coverage for all care consistent with GASC," which the Panel said "gives effect to all the Plan

10  provisions." 79 F.4th at 1088. The Panel was not talking about—and did not even assess—

11  UBH's current factual assertion that the *LOCGs* give effect to all the provisions of the Plans.

12  Instead, the Panel upheld the district court's factual finding that "the challenged portions of the

13  Guidelines represented UBH's *implementation* of the GASC requirement." 79 F.4th at 1088; *see*

14  *also Wit* FFCL, 2019 WL 1033730, at *10 (¶ 39) (UBH used the LOCGs "to establish criteria

15  consistent with generally accepted standards for determining the appropriate level of care").

16        UBH's argument fails before it starts, of course, because UBH's "alternative facts"

17  contradict the well-pleaded allegations in the Complaint, and therefore cannot be considered.

18  *See, e.g.*, *Weizman*, 2023 WL 8461173, at *2 ("On a Rule 12(b)(6) motion, the Court must take

19  the factual allegations in the complaint as true without considering competing factual allegations

20  presented by the other party."). Plaintiffs allege, citing affirmed findings of fact from the *Wit*

21  case, that UBH used its LOCGs to implement the Plans' GASC Requirement, *not* all the

22  requirements of the Plans "as a whole." AC ¶¶ 3, 44-45, 50, 56, 209. Nevertheless, it is still

23  worth noting that there is no support whatsoever in ERISA for UBH's argument that compliance

24  with plan terms immunizes a fiduciary from liability for other breaches of fiduciary duty.[11]

---

[11] UBH's reliance on *Wright* for this supposed rule is misplaced. The *Wright* plaintiffs alleged
that the administrators of their pension plan breached their fiduciary duties of prudence and
loyalty by refusing to *amend the plan* to permit participants to sell higher percentages of
employer stock. 360 F.3d at 1094. The Ninth Circuit affirmed dismissal of the prudence claim,
holding that the plaintiffs failed to plausibly allege a duty to diversify that trumped the terms of
(Continued…)

PLS.' OPP'N TO MOT. TO DISMISS OR TO STRIKE
                                                        CASE NO. 3:21-CV-08612-RS

**B.      Counts II and III Plausibly Plead Claims Under ERISA § (a)(1)(B).**

ERISA § (a)(1)(B) provides a cause of action for plan participants and beneficiaries to "recover benefits due to [them] under the terms of [the] plan, to enforce [their] rights under the terms of the plan, or to clarify [their] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The gravamen of Plaintiffs' § (a)(1)(B) claims in this case is that because UBH's Guidelines and Bundling Policy each conflict with and narrow the scope of coverage available under the terms of the Plaintiffs' plans, UBH abused its discretion by using those internal policies to deny Plaintiffs' requests for benefits. *See, e.g.*, *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 458 (9th Cir. 1996) ("An ERISA plan administrator abuses its discretion if it construes provisions of the plan in a way that 'conflicts with the plain language of the plan.'"). Plaintiffs, accordingly, seek to enforce and clarify their rights under their Plans to have their requests for benefits decided pursuant to standards that actually comply with their Plans' terms.

Notwithstanding the straightforward application of § (a)(1)(B)'s plain language to Plaintiffs' claims, UBH argues that Counts II and III must both be dismissed for a purported failure to allege "that application of the wrong standard could have prejudiced the claimant." Mot. 14 (quoting *Wit III*, 79 F.4th at 1084). UBH's argument is meritless.

**1.      *Wit III* Did Not Purport to State a New Standard for Pleading or Proving ERISA § (a)(1)(B) Claims.**

The discussion in *Wit III* on which UBH relies for its argument that Plaintiffs must plead and prove prejudice did not concern the elements of a § (a)(1)(B) claim, as UBH implies. Mot. 14. Rather, the Panel referred to a "potential prejudice" requirement in clarifying what an ERISA plaintiff has to show to be entitled to a reprocessing *remedy* for a wrongful denial of benefits, in

---

the plan. *Id.* at 1097-98. Dismissing the related loyalty claim, the court reasoned that "Defendants complied with the Plan's lawful terms and were under no legal obligation to deviate from those terms." *Id.* at 1100. Far from stating a general rule that compliance with plan terms always immunizes fiduciary breaches, *Wright* recognized that, in some circumstances, an administrator *may* owe a duty to "deviate" from a plan's lawful terms.

In any case, *Wright* is inapposite. The *Wright* plaintiffs—unlike the Plaintiffs here—did *not* allege that the defendants failed to comply with the terms of their plan, and they also did not plausibly allege any breach of fiduciary duty. Plaintiffs in this case plausibly plead both.

the context of reviewing certification of a class seeking that remedy. *Wit III* 79 F. 4th 1083-86. The Panel did not even discuss, let alone purport to redefine, the elements a plaintiff needs to *plead* to state a plausible claim under § (a)(1)(B). *See generally*, *id.*; *see also* Scope Order, 2023 WL 8717488, at \*26.

### 2.    *Wit III* Stated a "Potential Prejudice" Standard for a Reprocessing Remedy, Not an "Actual Entitlement to Benefits" Standard.

UBH also repeatedly mischaracterizes the *Wit III* reprocessing test as imposing an "*actual prejudice*" requirement. Mot. 15 (original emphasis). *See also id.* at 14 (using altered quotation from *Wit III*, 79 F.4th at 1086, to assert that "Plaintiffs must allege that 'UBH's alleged error in utilizing the Guidelines . . . prejudice[ed] [sic] them' in some concrete way."). Even if the reprocessing test from *Wit III* were applicable here—it is not—UBH grossly misstates the standard the Ninth Circuit enunciated.

In *Wit III*, the Ninth Circuit clarified that to be entitled to a reprocessing remedy under § (a)(1)(B), a plaintiff must show "that his or her claim was denied based on the wrong standard *and* that he or she **might be** entitled to benefits under the proper standard." 79 F.4th at 1084 (emphasis added). *See also id.* (reprocessing remedy requires "showing that application of the wrong standard **could have** prejudiced the claimant") (emphasis added). This is unquestionably a *potential* **prejudice** standard—a showing of actual prejudice, or actual entitlement to benefits, is not required to prove entitlement to a reprocessing remedy.

Plausibly pleading a § (a)(1)(B) claim cannot require a more onerous showing than is needed to be awarded a reprocessing remedy for that claim. Thus, even if the Court applies the *Wit III* reprocessing test here, all that could possibly mean is that Plaintiffs must plausibly allege that UBH used the wrong standard to deny their claims and that they "might be entitled to benefits under the proper standard." *Wit III*, 79 F.4th at 1084. Plaintiffs easily meet that standard.

### 3.    Plaintiffs Plausibly Allege that They "Might be Entitled" to Benefits.

UBH, remarkably, asserts that "*no Plaintiff* alleges a single fact" that "show[s]" they "might have been entitled to benefits" if UBH had applied the proper standards to determine their benefit claims. Mot. 14 (quoting AC ¶ 215). This is nonsense.

### a. Count II – Guideline Denials

With respect to UBH's Guideline-based denials, Plaintiffs allege that each of their Plans provided coverage for residential treatment of behavioral health conditions, AC ¶ 27, subject (in relevant part) to their Plans' GASC Requirement. AC ¶¶ 32-37. Plaintiffs further allege that UBH used its LOCGs to implement the GASC Requirement. AC ¶¶ 3, 44-45, 50, 56, 215. The LOCGs, however, grossly distort the Plan standard they purport to implement (i.e., GASC), making it excessively narrow. AC ¶¶ 49-55, 215.

When UBH denied Plaintiffs' requests for residential treatment, it gave only **one reason** for its denials: Plaintiffs' failure to satisfy UBH's LOCGs. *See, e.g.*, AC ¶¶ 65, 78, 83, 88, 100, 103, 107, 110, 113, 120, 123, 126, 129, 136, 139, 143, 153, 156, 159, 161, 168, 171, 173, 176, 183. Since UBH's application of an overly-narrow, Plan-violating standard was the sole and decisive basis for UBH's denials of coverage, it is at *least* plausible that if UBH had used the correct standard, it might have approved Plaintiffs' benefit requests. Thus, Plaintiffs have plausibly alleged that UBH's application of its LOCGs "could have prejudiced" Plaintiffs.

UBH's attempts to undercut these plausible allegations all fail. First, UBH argues—based on the wrong part of the Complaint—that Plaintiffs offer only a "conclusory" allegation that UBH's LOCGs were the "exclusive and decisive ground" for their denials. Mot. 14-15 (quoting AC ¶¶ 64-65).[12] To the contrary, Plaintiffs' allegations about UBH's sole reason for denying coverage quote directly from UBH's denial letters, which by law are required to include *all* of UBH's reasons for denial. *See* 29 C.F.R. § 2560.503-1(g)(1)(i). In its letters, UBH stated that its denial of each Plaintiff's request for coverage was "based on" the LOCGs. *See, e.g.*, AC ¶¶ 77, 82, 87 (allegations as to Beach). As Plaintiffs further allege, the letters also do not identify any other reason for any of the Plaintiffs' denials. *See, e.g.* AC ¶ 78, 83, 88. These allegations are far from conclusory. Taken as true, they plausibly allege that UBH gave one, and only one, reason for the Plaintiffs' denials: the Plaintiffs' failure to satisfy the LOCG criteria.

---

[12] UBH also quibbles with Plaintiffs' well-pleaded factual allegations about its claims processing procedures and what decisions it makes at what stages of the process. Mot. 14-15. The Court should disregard UBH's attempt to raise disputes of fact about those issues.

Nevertheless, UBH argues that Plaintiffs' allegations still fall short because Plaintiffs do not affirmatively allege that they satisfy every element of their Plans' definitions of "medical necessity." Mot. 15-16 (quoting definition from Beach's SPD). This argument, however, again seeks to impose an "actual entitlement to benefits" pleading standard—even though the *Wit III* test, which UBH itself argues should control, requires no more than potential prejudice. Plaintiffs have plausibly alleged that the only reason UBH gave for its denials turned on Guidelines that were inconsistent with the only Plan term the Guidelines purported to implement. Those allegations are sufficient to meet the *Wit III* standard.

In any event, none of UBH's denial letters—whose reasoning Plaintiffs quote in the Complaint—makes any reference to the other elements of the medical necessity definition UBH raises. *Compare, e.g.*, Mot. 16 (medically necessary treatment must be "[c]linically appropriate. . . and considered effective . . . ," not be "mainly for your convenience . . ." and not be "more costly" than an equivalent alternative) *with* AC ¶ 77 (explanation of why LOCGs not satisfied, making no reference to services being clinically inappropriate, considered ineffective, being mainly for convenience, or being more costly than equivalent alternatives). The Complaint, accordingly, supports the reasonable inference that UBH did not base its denials on any other elements of the medical necessity definition besides the GASC Requirement.

### b.  Count III – Bundling Policy Denials

With respect to UBH's Bundling Policy denials, Plaintiffs allege that their Plans provided coverage for the lesser-included component services Plaintiffs received as part of their residential treatment, AC ¶¶ 28-29, 93-95, 117-18, 144, 164-66, 169-71, 224, and that UBH itself explicitly opined that those lesser-included component services were medically necessary and appropriate for each Plaintiff. *See, e.g.*, AC ¶¶ 79, 104, 127, 160, 170 (PHP appropriate for Beach, Doe, Loe, Roe, Zoe); *id.* ¶ 140 (outpatient services appropriate for Poe). Yet, UBH denied coverage for the covered component services even though no plan term (e.g., an exclusion or limitation) justified its decision. AC ¶¶ 84, 98-100, 118-20, 134-36, 151-53, 166-68, 181-83, 223-24. Since the only reason UBH denied the component services is that it had required them to be submitted on a "bundled" basis with other services, AC ¶¶ 100, 120, 136, 153, 168, 183, if UBH had not applied

its Bundling Policy to Plaintiffs' coverage requests, Plaintiffs might have been entitled to coverage. AC ¶¶ 100, 120, 136, 153, 168, 183. These allegations are sufficient to state a plausible claim under § (a)(1)(B). *See, e.g.*, *Douglas v. Cal. Physicians' Serv.*, No. CV 23-1738-MWF (RAOx), 2023 WL 6038191, at *3 (C.D. Cal. Sept. 6, 2023) ("While Plaintiff[s] must 'identify a specific plan term that confers the benefit in question,' [they] need only allege the specific plan term 'in sufficient detail to put [UBH] on notice of the claims.'") (citation omitted).

Nonetheless, UBH argues that Plaintiffs "allege nothing in their Plans requiring coverage" of the component services "on an 'unbundled' basis when received as part of residential treatment." Mot. 20. But UBH has it backwards: Plaintiffs allege that the component services are *covered* under their Plans, and that there were no Plan provisions *excluding* or even limiting covered services merely because they were provided in a facility setting or in conjunction with other services, or otherwise requiring Plaintiffs to "bundle" their claims. In effect, therefore, UBH's Bundling Policy imposed a new exclusion of coverage not found in the Plan terms. This was an abuse of UBH's discretion. *See, e.g.*, *Saffle*, 85 F.3d at 459–60 (9th Cir. 1996) (construing plan to impose "a new requirement for coverage" was an abuse of discretion because "an administrator lacks discretion to rewrite the Plan").

UBH's post-hoc attempt to identify some Plan term to justify its Bundling Policy denials is similarly off-base. Mot. 20 (citing Nguyen Decl., Ex. A at 132). UBH points to a reference to "reimbursement policies" in the definition of "Eligible Expenses" in Plaintiff Beach's SPD, but that provision only addresses how UBH calculates the amount of benefits due for already-approved claims, not how UBH will decided *whether* to approve a claim. Nguyen Decl., Ex. A at 132; *see also id*. at 22 ("Eligible Expenses are the amount UnitedHealthcare determines that UnitedHealthcare will pay for Benefits.").[13] Neither the "Eligible Expenses" definition, nor any of the other general references to "reimbursement policies" in Beach's SPD, permits UBH to use its

---

[13] In any case, UBH's allegation that its Bundling Policy complies with the Plans' definitions of "Eligible Expenses" presents a question of fact not presently before the Court. *Weizman*, 2023 WL 8461173, at *2 (on a motion to dismiss, court must not consider "competing factual allegations presented by the other party").

1    Bundling Policy as grounds for excluding coverage for otherwise-covered services.[14]

2         UBH's last argument—that Plaintiffs do not allege "any harm to their right to benefits

3    resulting from UBH's alleged application" of the Bundling Policy, Mot. 21—is also specious.

4    Plaintiffs allege that they received services that are covered under their Plans, which UBH

5    conceded were medically necessary and appropriate, but UBH did not approve or pay benefits

6    for them. *See* § I.A.2, 6, 8, *supra*. Plaintiffs have alleged a straightforward monetary harm—loss

7    of benefits—that even UBH ought to concede is cognizable under ERISA § (a)(1)(B).

8         Instead, UBH blames *Plaintiffs* for its failure to approve and pay their benefits, because

9    the Plaintiffs did not submit brand new claims for the lesser-included services after UBH denied

10   coverage (without disclosing that it applied the Bundling Policy as a coverage exclusion or

11   providing instructions on how Plaintiffs *could* perfect their claims for the component services).

12   Mot. 21-22. Because Plaintiffs did not submit new claims post-denial, UBH declares they were

13   not "prejudiced" by being denied benefits for services that were covered under their Plans. *Id.*[15]

14   But UBH is really arguing that Plaintiffs should have *mitigated* the effect of UBH's improper

15   denials—it does not refute that an improper denial causes monetary loss. UBH also ignores the

16   fact that Plaintiff Poe *did* try to request reconsideration of his lesser-included component services

17

18   ───────────────

     [14] UBH's reliance on "Medicare guidance" purportedly referenced in the inapposite Eligible
19   Expenses definition, Mot. 21, is even more misguided. "Materials outside the complaint can be
     considered only if they are incorporated by reference therein or otherwise judicially noticeable."
20   *Weizman*, 2023 WL 8461173, at *2 (citing *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.
     2003). The Complaint does not reference, quote, or rely on the Medicare Claims Processing
     Manual UBH cites, so the Court must not consider that document.

21   In any event, UBH's assertion that the Beach SPD incorporates the Medicare Claims Processing
22   Manual unreasonably interprets the Eligible Expenses definition. The SPD says that
     "UnitedHealthcare develops the reimbursement policy guidelines, in UnitedHealthcare's
23   discretion, following evaluation and validation of all provider billings in accordance with one or
     more of the following methodologies: . . . As used for Medicare. . . ." Nguyen Decl., Ex. A at
24   132. On its face, this term refers to Medicare "methodologies" for "evaluation and validation of
     all provider billings," not Claims Processing. At the same time, Beach's SPD includes an entire
25   section on Claims Procedures, which does not mention Medicare (or bundling) at all. *See id.* at
     93-103 ("Section 9 – Claims Procedures").

26   [15] This argument only underscores how UBH's failure to establish and follow reasonable claims
     procedures injured the Plaintiffs by preventing them from perfecting their claims. *See* § III.C,
27   *infra*; *see also* 29 C.F.R. § 2560.503-1(g)(1)(iii) (denial letter must include a "description of any
     additional material or information necessary for the claimant to perfect the claim and an
28   explanation of why such material or information is necessary").

───────────────

PLS.' OPP'N TO MOT. TO DISMISS OR TO STRIKE
                                                    CASE NO. 3:21-CV-08612-RS

on an un-bundled basis, yet UBH refused to do so. AC ¶¶ 144-46. And in any event, UBH's

arguments about damage mitigation cannot be considered on a Rule 12(b)(6) motion. To survive

dismissal, Plaintiffs need only "nudge[]" their improper-denial claims "across the line from

conceivable to plausible." *Twombly*, 550 U.S. at 570. Plaintiffs have done so, and then some.

### C.    Count IV Plausibly Pleads that UBH Failed to Establish and Follow Reasonable Claims Procedures.

Missing the point of Count IV entirely, UBH brushes off Plaintiffs' full-and-fair-review

claim as stating a "bare procedural violation" that is "indistinguishable" from Plaintiffs' denial of

benefits claims. Mot. 24. Not so. Count IV asserts claims under ERISA § (a)(3), which provides

for injunctive and other equitable relief for violations of ERISA itself. 29 U.S.C. § 1132(a)(3).

Plaintiffs allege that, in violation of ERISA § 1133, UBH failed to give Plaintiffs adequate notice

in its denial letters that UBH relied on its Bundling Policy—and not the terms of the Plans—to

deny coverage for Plaintiffs' lesser-included services, and that UBH also failed to disclose how

Plaintiffs could have perfected their claims for those services. AC ¶¶ 99, 119, 135, 152, 167, 182.

By hiding the ball, UBH deprived Plaintiffs of any opportunity to object to UBH's undisclosed

reliance on its Bundling Policy to deny benefits for the lesser-included covered services. UBH's

lack of candor likewise prevented Plaintiffs from submitting new claim forms or otherwise being

able to perfect their claims for the covered component services they received. AC ¶¶ 99, 119, 135,

144-45, 152, 167, 182, 184, 231. These allegations *at least* plausibly establish that UBH failed to

provide for full and fair review of Plaintiffs' requests for coverage of the lesser-included services.

*Condry*—the only case on which UBH relies for dismissal of Count IV—is inapposite.

*See* Mot. 24 (citing *Condry v. UnitedHealth Grp., Inc.*, No. 20-16823, 2021 WL 4225536 (9th

Cir. Sept. 16, 2021). *Condry* was an appeal from a grant of *summary judgment*, in which the

Ninth Circuit affirmed that, as a matter of law under the Affordable Care Act, the plaintiffs'

plans were not required to cover out-of-network lactation services. 2021 WL 4225536, at *2.

Because the plaintiffs no longer had even a potential claim to benefits, the Court went on to

conclude that "a favorable ruling on [the plaintiffs'] full-and-fair review claims could not redress

any concrete injury." *Id.* at *3. Here, by contrast, Plaintiffs have plausibly pleaded their

1 entitlement to coverage for the lesser-included services, *see* § I.A.2, *supra*, meaning their

2 benefits claim is alive and well for purposes of UBH's motion to dismiss. Moreover, unlike in

3 *Condry*, Plaintiffs allege that UBH's *sub silentio* bundled-claim denials are part of its standard

4 operating procedures, *see, e.g.*, AC ¶¶ 73-74, raising the reasonable inference that Plaintiffs may

5 be injured by UBH's faulty procedures again in the future. *See, e.g.*, *Steelman v. Prudential Ins.*

6 *Co. of Am.*, No. CIV. S-06-2746 LKK/GGH, 2007 WL 1080656, at *3 (E.D. Cal. Apr. 4, 2007)

7 ("The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn

8 from the 'well-pleaded' allegations of the complaint.") (citations omitted). In sum, Count IV

9 plausibly alleges § 1133 violations, for which § (a)(3) provides appropriate equitable relief.

10     **D.**    **UBH's Motion to Dismiss or Strike Portions of Plaintiffs' Prayer for Relief is Frivolous and Must be Denied.**

11

12     UBH's last, desperate attempt to curtail Plaintiffs' potential relief, Mot. 24-25, also fails,

13 because neither Rule 12(b)(6) nor Rule 12(f) authorizes the Court to excise part of Plaintiffs'

14 prayer for relief. *See, e.g.*, *Kev & Cooper, LLC v. Furnish My Place, LLC*, No. 8:20-CV-01509-

15 MCS-KES, 2021 WL 6618745, at *3 (C.D. Cal. Nov. 28, 2021) ("Neither Rule 12(b)(6) nor Rule

16 12(f) authorizes dismissal of a prayer for damages in a pleading.") (citing cases).

17     Rule 12(b)(6) permits dismissal only for failure to state a *claim*, not for failure to state a

18 proper remedy. Fed. R. Civ. P. 12(b)(6); *see also, e.g.*, *City of L.A. v. Lyons*, 461 U.S. 95, 130

19 (1983) (Marshall, J., dissenting) ("The question whether a plaintiff has stated a claim turns not

20 on whether he has asked for the proper remedy but whether he is entitled to *any* remedy.")

21 (cleaned up). "[B]ecause a prayer for relief is a remedy and not a claim, a Rule 12(b)(6) motion

22 to dismiss for failure to state a claim is not a proper vehicle to challenge a plaintiff's prayer for

23 punitive damages, because Rule 12(b)(6) only countenances dismissal for failure to state a

24 claim." *Elias v. Navasartian*, No. 1:15-CV-01567-LJO-GSA-PC, 2017 WL 1013122, at *4 (E.D.

25 Cal. Feb. 17, 2017) (collecting cases), *rept. & rec. adopted*, 2017 WL 977793 (E.D. Cal. Mar.

26 13, 2017); *see also, e.g.*, *Saroya v. Univ. of Pac.*, 503 F. Supp. 3d 986, 1000 (N.D. Cal. 2020).

27     Rule 12(f) does not authorize the striking of requested relief, either—even if (contrary to

28 the situation here) such relief is arguably unavailable as a matter of law. *Whittlestone, Inc. v.*

1  *Handi-Craft Co.*, 618 F.3d 970, 974-75 (9th Cir. 2010); *Cordon v. Wachovia Mortg.*, 776 F.

2  Supp. 2d 1029, 1041 (N.D. Cal. 2011) (denying motion to strike claim for punitive damages as

3  "legally unavailable" because the "Ninth Circuit has held that Rule 12(f) cannot be utilized in

4  that manner").[16] In *Whittlestone*, the Ninth Circuit found Rule 12(f) inapplicable to a punitive

5  damages claim because the material sought to be stricken did not fall into any of the five

6  categories listed in the Rule—i.e., material that is: "(1) an insufficient defense; (2) redundant;

7  (3) immaterial; (4) impertinent; or (5) scandalous." 618 F.3d at 973-74. In particular, even

8  though the defendant argued that the proposed remedy was "precluded as a matter of law,"

9  *Whittlestone* held that the request for the remedy was neither "immaterial" nor "impertinent"

10  because it related "directly" to the plaintiff's underlying claim and the harm alleged. *Id.* at 974.

11      UBH does not even attempt to argue that Paragraphs H and I of Plaintiffs' Prayer for

12  Relief fall into any of Rule 12(f)'s five categories—nor could it. The only ground UBH offers for

13  striking those paragraphs is its contention that "Plaintiffs' facial challenge to the LOCGs cannot

14  support claim reprocessing under ERISA." Mot. 25. But this is the exact reasoning the Ninth

15  Circuit rejected in *Whittlestone*. 618 F.3d at 974. Just like in *Whittlestone*, whether Plaintiffs are

16  entitled to a reprocessing injunction relates directly to their underlying claims for relief and the

17  harm being alleged—among other things, Plaintiffs' allegations that UBH denied Plaintiffs'

18  benefit claims using an improper standard and a non-existent exclusion, and that if UBH had

19  properly construed the Plans, Plaintiffs might have been entitled to benefits. *See, e.g.*, § I.A.2, 6,

20  *supra*. Plaintiffs' prayer is anything but "immaterial" or "impertinent," and must not be struck.[17]

21  **IV.   Conclusion**

22      For the reasons set forth above, the Court should deny UBH's Motion.

23

24  [16] Subsequent decisions have properly applied *Whittlestone*'s reasoning to deny motions to strike requests for equitable relief. *See, e.g.*, *Ticer v. Young*, No. 16-CV-02198-KAW, 2018 WL 2088393, at *11 (N.D. Cal. May 4, 2018) (citing cases); *McGuire v. Recontrust Co., N.A.*, No.

25  2:11-cv-2787-KJM-CKD, 2013 WL 5883782, at *3 (E.D. Cal. Oct. 30, 2013) (denying motion to strike the plaintiff's request for equitable relief and attorneys' fees).

26  [17] Plaintiffs previously cited the authorities discussed in this section in opposition to UBH's first

27  motion to dismiss, yet UBH simply ignores them. *See* ECF No. 38 at 11-13. UBH's insistence on pushing this untenable argument, while failing to cite controlling Ninth Circuit authority holding

28  that the argument is impermissible, hardly seem compatible with Rule 11(b)(2).

1    Dated: December 20, 2024                    **ZUCKERMAN SPAEDER LLP**

2                                                /s/ *Caroline E. Reynolds*

3                                                Caroline E. Reynolds (*pro hac vice*)
                                                 D. Brian Hufford (*pro hac vice*)
4                                                Jason S. Cowart (*pro hac vice*)
                                                 M Moore (*pro hac vice*)
5
                                                 **PSYCH-APPEAL, INC.**
6                                                Meiram Bendat (Cal. Bar No. 198884)

7
                                                 *Counsel for Plaintiffs and*
8                                                *the Putative Classes*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28