| | |
|---|---|
| 1 | Jennifer S. Romano (State Bar No. 195953) |
| 2 | JRomano@Crowell.com<br>Andrew Holmer (State Bar No. 268864) |
| 3 | AHolmer@Crowell.com<br>Jazmine Buckley (State Bar No. 341516) |
| 4 | JBuckley@Crowell.com<br>CROWELL & MORING LLP |
| 5 | 515 South Flower Street, 40th Floor<br>Los Angeles, CA 90071 |
| 6 | Telephone: 213.622.4750 |
| 7 | Facsimile: 213.622.2690 |
| 8 | Attorneys for Defendant<br>UNITED BEHAVIORAL HEALTH |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BARBARA BEACH, on her own behalf and on behalf of her minor daughter and all others similarly situated, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH,<br><br>Defendant. | Case No. 3:21-cv-08612-RS<br><br>**UNITED BEHAVIORAL HEALTH'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**<br><br>Hearing Date: February 6, 2025<br>Hearing Time: 1:30 pm<br><br>Hon. Richard Seeborg |

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

ARGUMENT ................................................................................................................................... 2

    I.    The Court Should Dismiss Plaintiffs' Guideline Denial Claims (Counts I and II)............... 2

        A.    Plaintiffs' Guideline Denial of Benefits Claim Should Be Dismissed Because Plaintiffs Do Not Allege Causation and Harm. ................................................................................... 2

        B.    Plaintiffs' Guideline Breach of Fiduciary Duty Claim Should Be Dismissed.................. 7

    II.    The Court Should Dismiss Plaintiffs' Bundled Denial Claims (Counts I, III, and IV). ..... 10

        A.    Plaintiffs' Bundled Denial Of Benefits Claim (Count III) Has No Support In The Law Or The Plans. ................................................................................................................... 10

        B.    The Court Should Dismiss Plaintiffs' Inadequate Notice Claim (Count IV) For the Same Reasons It Should Dismiss Count III. ............................................................................. 11

    III.    The Court Should Strike or Dismiss Plaintiffs' Prayer for Claim Reprocessing. ........... 12

CONCLUSION ............................................................................................................................ 13

CROWELL & MORING LLP
ATTORNEYS AT LAW

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Alberts v. Liberty Life Assurance Co. of Boston*,
  No. C 14-01587 RS, 2014 WL 2465121 (N.D. Cal. June 2, 2014) ..........................................13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................................................5

*Beluca Ventures, LLC v. Einride Aktiebolag*,
  No. 21-cv-06992-WHO, 2022 WL 17252589 (N.D. Cal. Nov. 28, 2022) ...............................13

*Brady v. United of Omaha Life Ins. Co.*,
  902 F. Supp. 2d 1274 (N.D. Cal. 2012) ...................................................................................13

*City of Oakland v. Wells Fargo & Co.*,
  14 F.4th 1030 (9th Cir. 2021) ....................................................................................................8

*Condry v. UnitedHealth Grp., Inc.*,
  No. 20-16823, 2021 WL 4225536 (9th Cir. Sept. 16, 2021) ..............................................11, 12

*Englert v. Prudential Ins. Co. of Am.*,
  186 F. Supp. 3d 1044 (N.D. Cal. 2016) ...................................................................................13

*Henry v. Napa Valley Unified*,
  Case No. 16-cv-04021, 2016 WL 7157670 (N.D. Cal. Dec. 8, 2016)......................................10

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014)...................................................................................................................8

*Pollock v. Federal Insurance Co.*,
  No. 21-cv-09975-JCS, 2022 WL 912893 (N.D. Cal. Mar. 29, 2022).......................................13

*Saffle v. Sierra Pacific Power Co. Bargaining Unit Long Term Disability Income Plan*,
  85 F.3d 455 (9th Cir. 1996)......................................................................................................10

*Whittlestone, Inc. v. Handi-Craft Co.*,
  618 F.3d 970 (9th Cir. 2010)....................................................................................................13

*Wit v. United Behavioral Health*,
  79 F.4th 1068 (9th Cir. 2023) ............................................................................................ passim

*Wright v. Or. Metallurgical Corp.*,
  360 F.3d 1090 (9th Cir. 2004).................................................................................................8, 9

**Statutes**

29 U.S.C. § 1132(a)(3) ............................................................................................................. 12, 13

ERISA ............................................................................................................................... *passim*

**Other Authorities**

Dep't of Health & Human Services, Center for Medicare & Medicaid Services,
  Medicare Claims Processing Manual, Dep't of Health & Human Services,
  Center for Medicare & Medicaid Services, Medicare Claims Processing
  Manual, Chapter 1, https://www.cms.gov/regulations-and-
  guidance/guidance/manuals/downloads/clm104c01.pdf ............................................................. 11

Rule 12(b)(6) ............................................................................................................................ 12, 13

Rule 12(f) .................................................................................................................................. 12, 13

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-iii-

REPLY IN SUPPORT OF MOTION TO DISMISS;
CASE NO. 3:21-CV-08612-RS

## INTRODUCTION

Plaintiffs ask this Court to allow their ERISA claims to proceed to discovery, even though the Ninth Circuit flatly rejected the central theory underlying their claims. In the strikingly similar case of *Wit v. United Behavioral Health*, 79 F.4th 1068 (9th Cir. 2023) ("*Wit*"), the Ninth Circuit held that a plaintiff is not entitled to ERISA remedies without showing they were prejudiced from the challenged conduct. As in *Wit*, Plaintiffs seek relief from United Behavioral Health ("UBH") arising out of its use of certain challenged provisions of its Level of Care Guidelines ("LOCGs"), which they claim are not consistent with generally accepted standards of care ("GASC"), but Plaintiffs do not identify which provisions they challenge and they do not plead facts showing that those challenged provisions impacted them in any way. Plaintiffs chose their "facial challenge" legal strategy, and remain steadfast in pursuing it despite the decision in *Wit* and an opportunity to amend. They do not plead a claim that could give rise to relief, and their Amended Complaint should be dismissed.

First, *Wit* held that for Counts I and II Plaintiffs must show that the challenged conduct was the but-for cause of their injury—*i.e.* that Plaintiffs' requests for benefits were denied based on an erroneous provision of the LOCGs *and* that Plaintiffs might be entitled to benefits under the correct standard. In other words, *Wit* demands a showing both that Plaintiffs were prejudiced by application of the LOCGs, and they may benefit from the relief they seek. Plaintiffs have no credible argument that they plead facts to satisfy this standard, so instead they attack a strawman, insisting that UBH erroneously contends that Plaintiffs "must plead and prove actual entitlement to benefits" to proceed on their ERISA claims. Opp. at 1. That is not UBH's argument, nor is it why Plaintiffs' claims fall short. Plaintiffs pled their Counts I and II as a facial challenge to the LOCGs, without alleging prejudice to any plaintiff. They did not allege that UBH applied the challenged LOCG provisions to their claims, and they do not plead facts that would show they might be entitled to benefits if a different standard was applied. *Wit* compels the claims' dismissal.

Second, as to Counts III and IV, Plaintiffs challenge UBH's non-payment of "component services" bundled within otherwise denied claims, but Plaintiffs still identify no basis for their

assertion that UBH was obligated to pay for these component services. Plaintiffs do not allege that they ever submitted claims for payment for the component services, which is a clear requirement for payment under the ERISA plans. And Plaintiffs fail to identify any plan provision, statute, or case law supporting their assertion that, after denying a claim for residential treatment for lack of medical necessity, UBH was required to investigate the individual services that might have been provided, assess whether they might be covered under the plan, and pay individually for each unbilled, component service. It is hornbook law that a plaintiff cannot bring a claim for failure to engage in certain conduct, without identifying an enforceable legal duty requiring that conduct in the first place. Plaintiffs fail to plead a claim under Counts III and IV.

Finally, regardless of how the Court resolves the substantive counts, the Court should dismiss or strike Plaintiffs' prayer for reprocessing relief. *Wit* held reprocessing is not an available remedy based on Plaintiffs' theory of the case. This Court should strike or dismiss portions of prayers for relief under Rules 12(b)(6) and 12(f).

## ARGUMENT

### I. The Court Should Dismiss Plaintiffs' Guideline Denial Claims (Counts I and II).

#### A. Plaintiffs' Guideline Denial of Benefits Claim Should Be Dismissed Because Plaintiffs Do Not Allege Causation and Harm.

As set forth in the motion to dismiss, Plaintiffs' guideline denial claim fails to plead the two elements of causation and harm: that "his or her claim was denied based on the wrong standard *and* that he or she might be entitled to benefits under the proper standard." *Wit*, 79 F.4th at 1084 (emphasis original). To avoid arguing that they satisfy this standard (because they do not), Plaintiffs invent a strawman argument. UBH nowhere asserts that Plaintiffs must plead and prove "actual entitlement of benefits." Opp. at 18. Plaintiffs' argument, just like their exaggerated rhetoric ("grossly misstates," "nonsense," "grossly distort," Opp. at 18–19), is designed to distract from the fundamental flaws in their pleadings.

The law is clear: the Ninth Circuit has "never held that a plaintiff is entitled to reprocessing without a showing that application of the wrong standard *could have prejudiced* the claimant." *Wit*, 79 F.4th at 1084 (emphasis added). To plead facts to support this showing, first

Plaintiffs must identify what guideline provision (or provisions) was actually applied to their claims and why it was wrong. *See id.* at 1086 ("An individual plaintiff who demonstrated an error in the Guidelines would not be eligible for reprocessing without at least some showing that UBH employed an errant portion of the Guidelines that related to his or her claim."). Then, Plaintiffs must plead facts to show that they "might be entitled to benefits" under the correct standard. *Id.* at 1084. Plaintiffs do neither.

### 1. Plaintiffs Do Not Allege That UBH Applied The Wrong Standard To Their Requests For Coverage.

Count II for denial of benefits based on the guidelines rests on a vague and conclusory allegation: "The Level of Care Guidelines were the exclusive and decisive basis for each benefit denial at issue in this claim, and Plaintiffs and members of the putative Guideline Denial Class might have been entitled to benefits if UBH had applied guidelines that were consistent with the relevant plan terms." Am. Compl. ¶ 215. In other words, Plaintiffs contend that they only need to show that their claims were denied based on the LOCGs *in toto* in order to state a claim. *See* Opp. at 19 ("Since UBH's application of an overly-narrow, Plan-violating standard was the sole and decisive basis for UBH's denials of coverage, it is at *least* plausible that if UBH had used the correct standard, it might have approved Plaintiffs' benefit requests."). But the Ninth Circuit has already rejected this shortcut to liability.

In *Wit*, the district court certified classes and entered judgment on the plaintiffs' denial of benefits claim based on the *Wit* plaintiffs' virtually identical argument that they only needed to show that the LOCGs, *in general*, were cited in the underlying benefit decisions. *Wit*, 79 F.4th at 1085 ("the district court reasoned that . . . 'every adverse benefit determination made by UBH based in whole or in part on any of the Guidelines ... was wrongful and made in violation of plan terms and ERISA.'"). But the Ninth Circuit declared such a showing was insufficient to support an ERISA claim for denial of benefits because there were "also many provisions of the Level of Care Guidelines that Plaintiffs did not challenge and that the district court did not find to be overly restrictive." *Id.* at 1085. Instead, to support a claim for denial of benefits, a plaintiff must "show[] that UBH employed an *errant* portion of the Guidelines . . . *to his or her claim.*" *Id.* at

1086 (emphasis added).

Like the prior LOCGs at issue in *Wit*, the 2018 and 2019 LOCGs at issue in this case consisted of numerous different criteria, any of which could have independently resulted in the denial of coverage. *See* Am. Compl. ¶ 54 (alleging that the 2018 and 2019 LOCGs both contained a set of "'Common Criteria,' all of which had to be satisfied for coverage to be approved at any level of care"); Am. Compl. ¶ 55 (alleging that the 2018 and 2019 LOCGs also "contained specific criteria applicable to particular levels of care in the context of either mental health conditions or substance use disorders, which *also* had to be satisfied in order for coverage to be approved at a particular level of care"). Plaintiffs vaguely allege that unspecified portions of those criteria were "excessively restrictive," (*id.* at ¶¶ 54, 55), but they do not allege that *every* criterion in the 2018 and 2019 LOCGs were "excessively restrictive." *Compare* Am. Compl. ¶ 47 (alleging that the 2018 and 2019 LOCGs at issue in this case were "substantially similar" to the LOCGs at issue in *Wit*), *with Wit*, 79 F.4th at 1085 ("there are also many provisions of the Level of Care Guidelines that Plaintiffs did not challenge and that the district court did not find to be overly restrictive"). And Plaintiffs do not allege a *specific* "errant portion of the Guidelines" that was actually applied "*to his or her claim*." *Id.* at 1086. Nor could they possibly do so; Plaintiffs do not allege any *specific* criteria in either the 2018 or 2019 LOCGs that they contend were "errant." Plaintiffs do not allege the first element of their denial of benefits claim—that UBH applied the wrong standard—because they do not allege a specific "errant" portion of the LOCGs that was actually applied to their request for benefits.

### 2. Plaintiffs Do Not Allege That They Might Be Entitled To Benefits Under Their Preferred Standard.

Plaintiffs' factual allegations on the second element of their denial of benefits claim—prejudice—are equally nonexistent. As UBH explained in its motion, Plaintiffs' *only* allegation on that point is their conclusory assertion that *all* named Plaintiffs and every "member[] of the putative Guideline Denial Class might have been entitled to benefits if UBH had applied guidelines that were consistent with the relevant plan terms." Am. Compl. ¶ 215. That bare allegation, which parrots the legal standard in *Wit*, is insufficient to state claim. *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim).

In their Opposition, Plaintiffs do not argue that their mere assertion that they "might have been entitled to benefits" satisfies their burden. Instead, Plaintiffs return to their failed argument that, because UBH cited the LOCGs *in general* in denying each of their requests for coverage, "it is at *least* plausible that if UBH had used the correct standard, it might have approved Plaintiffs' benefit requests." Opp. at 19. That fails *Wit*. Rather, Plaintiffs must allege facts to show that their "claims were denied based *only on the challenged provisions* of the" LOCGs. *Wit*, 79 F.4th at 1086 (emphasis added). Plaintiffs do not do that. They do not even allege which guideline provisions they challenge, let alone that any of their requests for coverage were denied based "only on the challenged provisions." *Id.* (reversing judgment on a denial of benefits claim because, "[r]ather than determining whether UBH denied Plaintiffs' claims under a flawed provision of the Guidelines, the district court determined that remand was appropriate anytime UBH referenced any portion of the Guidelines in denying the claims.").

Even if Plaintiffs had alleged specific challenged criteria that were the *sole* basis for their benefit decisions (they have not), their claim falls short because they do not allege facts showing that they "might be entitled to benefits *under the proper standard*." *Wit*, 79 F.4th at 1084. Plaintiffs ask the Court to assume that, "if UBH had used the correct standard, it might have approved Plaintiffs' benefit requests." Opp. at 19. Plaintiffs are not entitled to substantive relief on their denial of benefits claim if "it was clear that the claimant was ineligible for benefits" even under the "correct" standard. *Wit*, 79 F.4th at 1084. But they allege no facts to indicate that they would even *potentially*[1] be entitled to benefits under their preferred guidelines. *See* Am. Compl. ¶ 40 (alleging the guidelines that Plaintiffs contend reflect GASC).

Finally, Plaintiffs argue that they can ignore other, independent requirements for coverage in the plans beyond the requirement that the services are consistent with generally accepted

---

[1] Plaintiffs' manufactured distinction between alleging a "potential" prejudice or "actual" prejudice to state a claim for relief under ERISA misses the point. *See* Opp. at 1, 18, 20. The point is that they must allege *facts* supporting prejudice—not mere legal conclusions. *See Iqbal*, 556 U.S. at 678.

standards of care. Again, UBH does not argue that Plaintiffs must show an actual entitlement to benefits. *See* Opp. at 20 ("This argument, however, again seeks to impose an 'actual entitlement to benefits' pleading standard . . . ."). Rather, Plaintiffs do not satisfy the pleading requirement that they might be entitled to benefits under ERISA because they do not plead facts showing that the services were medically necessary. This is a requirement under each ERISA plan. Consistency with generally accepted standards of care is just one necessary (but not sufficient) component of medical necessity. *See* Mot. at 15. Not a single Plaintiff alleges that they satisfied the other requirements for medical necessity under the terms of each of their plans—*e.g.*, "[n]ot more costly than an alternative" treatment "that is at least as likely to produce equivalent . . . results"; "[c]linically appropriate, in terms of type, frequency, extent, service site, and duration"; "[n]ot mainly for [the patient's] convenience or that of [their] . . . health care provider." Mot. Ex. A, ECF No. 78-3 at 137. Thus, even if Plaintiffs alleged facts to show that UBH misapplied the generally accepted standard of care element of medical necessity (they have not), reprocessing under different guidelines reflecting generally accepted standards of care would be a "useless formality" because Plaintiffs fail to allege that they might be eligible for benefits under the plans' *other* requirements for medical necessity. *See Wit*, 79 F.4th at 1084 ("We have never held that a plaintiff is entitled to reprocessing" where "it was clear that the claimant was ineligible for benefits.").

Without any allegations as to medical necessity, Plaintiffs pivot and proclaim that "none of UBH's denial letters—whose reasoning Plaintiffs quote in the Complaint—makes any reference to the other elements of the medical necessity definition UBH raises." *See* Opp. at 20. Not so. Plaintiffs' citation to Plaintiff Beach's decision letter proves the opposite. To be medically necessary under Plaintiff Beach's plan, services must be "[c]linically appropriate, in terms of type, frequency, extent, service site," separate and apart from being consistent with generally accepted standards of care. ECF No. 78-3 at 137. Plaintiffs' own Complaint confirms that UBH addressed those aspects of medical necessity in deciding Plaintiff Beach's request for coverage: "[y]our child did not have clinical issues requiring 24-hour monitoring in a residential setting." Am. Compl. ¶ 87.

As explained in the motion to dismiss (Mot. at 16), Plaintiffs' failure to plead any of the individualized facts necessary to show prejudice is a strategic choice designed to avoid individualized considerations that preclude class certification. Just like in *Wit*, that strategic decision dooms Plaintiffs' denial of benefits claim on the merits. *See Wit*, 79 F.4th at 1086 ("the same errors present in the district court's denial of benefits class certification order also infected its merits and remedy determinations"). Plaintiffs fail to state a claim upon which relief can be granted.

### B. Plaintiffs' Guideline Breach of Fiduciary Duty Claim Should Be Dismissed.

#### 1. Plaintiffs Do Not Allege ERISA Statutory Causation And Harm.

Plaintiffs do not dispute that their claim for breach of fiduciary duty requires a showing of prejudice resulting from the alleged breach. *See Ellenburg v. Brockway, Inc.*,[2] 763 F.2d 1091, 1096–97 (9th Cir. 1985) (Even when an ERISA administrator's "procedural violation constitutes a breach of fiduciary duties," a "substantive remedy would be appropriate only if the procedural defects caused a substantive violation or themselves worked a substantive harm."). Because Plaintiffs plead no facts showing prejudice due to the application of the challenged provisions in the LOCGs, the breach of fiduciary duty claim fails.

Plaintiffs admit that all of the harms they allege in this case, including in their Count I for breach of fiduciary duty, "at some level, arise from their 'right to plan benefits'" under ERISA. Opp. at 14. Indeed, the gravamen of Plaintiffs' Count I for breach of fiduciary duty as it relates to Plaintiffs' guideline denial claim is that by purportedly "allow[ing] its own financial self-interest to infect its development of its Level of Care Guidelines and by deliberately developing and adopting as its standard medical-necessity criteria to implement the plans' GASC Requirement Guidelines that were much more restrictive than generally accepted standards of care," UBH "reduc[ed] the amount of benefits due to plan participants and beneficiaries." Am. Compl. ¶ 209. Their claim for breach of fiduciary duty as to the guideline denial claim thus fails for the same

---

[2] Plaintiffs mischaracterize UBH's argument as asserting that *Ellenburg* holds each of the specific harms alleged in this case are procedural. Opp. at 14 n.10. That is not UBH's argument. Rather, UBH cites *Ellenburg* for the uncontested point that all ERISA claims for breach of fiduciary duty require a showing of substantive prejudice.

1  reasons as their denial of benefits claim. Plaintiffs do not allege that any of the supposedly "more
2  restrictive" LOCG criteria developed in alleged violation of UBH's fiduciary duties "worked a
3  substantive harm" (i.e., caused prejudice) to their right to plan benefits.

4        Plaintiffs' only response is to invoke the wrong legal standard. Specifically, Plaintiffs rely
5  on *Wit's* Article III standing analysis to argue that they sufficiently allege the elements of
6  causation and harm on their statutory ERISA claim for breach of fiduciary duty. Opp. at 15
7  (citing *Wit*, at 79 F.4th at 1082). But under settled law (including *Wit*), Article III standing
8  requirements and statutory causation requirements serve distinct purposes and "are not
9  coextensive." *City of Oakland v. Wells Fargo & Co.*, 14 F.4th 1030, 1039 (9th Cir. 2021).
10 Demonstrating an injury for Article III standing purposes does not establish that the plaintiff has a
11 right to recover under the particular statute. *See, e.g.*, *Lexmark Int'l, Inc. v. Static Control*
12 *Components, Inc.*, 572 U.S. 118, 134 n.6 (2014) ("Proximate causation is not a requirement of
13 Article III standing, which requires only that the plaintiff's injury be fairly traceable to the
14 defendant's conduct.").

15       **2.    Plaintiffs Do Not Allege Any Fiduciary Duty That Was Breached.**

16       Plaintiffs fail to allege a fiduciary duty that was breached, because they neither allege nor
17 argue that UBH's LOCGs were actually inconsistent with the full medical necessity requirements
18 set forth in their plans (let alone inconsistent with their plans as a whole).

19       As Plaintiffs acknowledge elsewhere in their opposition, "protecting employees' interests
20 in [plan defined] benefits is ERISA's whole purpose." Opp. at 15. Since the function of ERISA is
21 to "protect contractually defined benefits," *Wit*, 79 F.4th at 1082, the fiduciary duties imposed by
22 ERISA are intended to promote, and must generally yield, to the written terms of the plan. Thus,
23 under settled Ninth Circuit law, an ERISA administrator cannot have breached any fiduciary
24 duties so long as it "complied with the [p]lan[s'] lawful terms and [was] under no legal obligation
25 to deviate from those terms . . . ." *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th
26 Cir. 2004).

27       Plaintiffs do not contend that the plans or ERISA impose any free-standing duty to
28 develop guidelines that are solely consistent with generally accepted standards of care. And they

do not allege that any terms of their plans were unlawful or that UBH was under any legal obligation to deviate from those plan terms in developing its LOCGs. With no allegation that UBH actually did something that the plans did not permit, Plaintiffs' claim that UBH breached its fiduciary duties of care and loyalty fail as a matter of law.[3] *Wright*, 360 F.3d at 1103 (affirming dismissal of ERISA claims for breach of the duties of prudence and loyalty where the administrator "compl[ied] with the *lawful* terms of the Plan").[4]

Plaintiffs try to avoid this result by alleging that UBH intended for its LOCGs to *solely* interpret generally accepted standards of care without regard to the other criteria for medical necessity under the plans, and therefore, its failure to create LOCGs that *solely* interpret generally accepted standards of care violated the plans. *See* Opp. at 15 ("Plaintiffs allege that UBH's Guidelines reflected its interpretation of the Plans' GASC Requirement, not other terms in the Plans, and certainly not all of them in combination."). But even if that were true (it is not), nothing in ERISA supports Plaintiffs' compartmentalized view of ERISA's fiduciary duties. "ERISA requires fiduciaries to comply with a plan as written," not just isolated plan terms, "unless it is inconsistent with ERISA." *Wright*, 360 F.3d at 1100.

If anything, Plaintiffs' narrow focus on whether UBH loyally or prudently interpreted a single plan term in isolation only highlights their failure to allege causation and harm. Even if Plaintiffs could allege a technical breach of fiduciary duty based on the misinterpretation of an isolated plan term, under settled Ninth Circuit law, Plaintiffs are not entitled to a substantive remedy under ERISA unless the interpretation failed to give effect to the plan as a whole. *Ellenburg*, 763 F.2d at 1097 ("procedural defects" that constitute a "breach of fiduciary duties" do not give rise to substantive remedies if the terms of the plan clearly render the member

---

[3] Plaintiffs try to recast their own failure to allege these essential facts as a factual dispute beyond the scope of a motion to dismiss. Opp. at 16. Plaintiffs cannot shift their burden of pleading to UBH by calling their own missing allegations "alternative facts." As in *Wright*, Plaintiffs' failure to allege that UBH acted inconsistently with the lawful terms of the plans requires dismissal at the pleading stage. *See Wright*, 360 F.3d at 1103.

[4] Plaintiffs try to distinguish *Wright*, arguing that "*Wright* recognized that, in some circumstances, an administrator *may* owe a duty to 'deviate' from a plan's lawful terms." Opp. at 17 n.11. But as *Wright* explained, that duty only arises when there is some affirmative "*legal obligation* to deviate from those terms . . . ." *Wright*, 360 F.3d at 1100 (emphasis added). Plaintiffs allege no affirmative legal obligation to deviate from plan terms here.

ineligible for benefits). Plaintiffs do not make this allegation.

## II. The Court Should Dismiss Plaintiffs' Bundled Denial Claims (Counts I,[5] III, and IV).

### A. Plaintiffs' Bundled Denial Of Benefits Claim (Count III) Has No Support In The Law Or The Plans.

Plaintiffs' bundling claim also should be dismissed because Plaintiffs do not identify a plan term that entitles them to payment for component services that were never billed by the providers or members. Because none exists. To the contrary, the plans state that UBH "develops its reimbursement policy guidelines" in accordance with, *inter alia*, methodologies "[a]s used for Medicare." ECF No. 78-3 at 123–24; Mot. at 21–22. And, the Medicare rules provide that claims for non-physician services rendered in a facility setting must be billed as the facility-based service itself (e.g., partial hospitalization), and not as multiple component services. *See* Mot. at 21 (detailing Medicare bundling requirement). Plaintiffs seem to concede as much in their opposition. Opp. at 22.

In response, Plaintiffs argue that "UBH has it backwards," and that UBH actually must show an exclusion that supports its claims adjudication. Plaintiffs cite no case for this proposed burden-shifting—and no law supports it. Indeed, Plaintiffs' entire paragraph on this issue only includes one citation, to *Saffle v. Sierra Pacific Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455 (9th Cir. 1996), which stands for the uncontroversial proposition that an administrator cannot construe the scope of coverage under the plan to be more narrow than what the plan terms provide. *Id.* at 459–60. That is not the issue. Here, Plaintiffs contend that UBH should have paid for unbundled component services that Plaintiffs concede were never billed. Not only do Plaintiffs fail to identify any plan term, ERISA statute or case law supporting

---

[5] UBH has argued that Plaintiffs' Count I for breach of fiduciary duty also fails to a state claim to the extent it is based on Plaintiffs' bundled denial theory (*see* Am. Compl. ¶ 210). Specifically, Plaintiffs fail to allege any fiduciary breach arising from its reimbursement policy, and Plaintiffs do not allege any substantive harm from application of the policy. In their opposition, Plaintiffs do not mention Count I or fiduciary breach in defending their bundled denial theory. They therefore waive any argument in opposing UBH's motion on this issue. *See* Opp. at 13–16; *Henry v. Napa Valley Unified*, Case No. 16-cv-04021, 2016 WL 7157670, at *4 (N.D. Cal. Dec. 8, 2016) ("Typically, failure to address in an opposition arguments raised in an opening motion, as Plaintiff did here, constitutes waiver or concession of the argument.").

1  an obligation for UBH to pay for these services, but UBH cites plan provisions and Medicare
2  rules showing it has no such obligation. Opp. at 20; Am. Compl. ¶ 71; *see also* Dep't of Health &
3  Human Services, Center for Medicare & Medicaid Services, Medicare Claims Processing
4  Manual, Dep't of Health & Human Services, Center for Medicare & Medicaid Services, Medicare
5  Claims Processing Manual, Chapter 1, §§ 50 (explaining that "payment may not be made . . .
6  unless . . . the provider files a timely claim") & 50.1.7 (explaining that a "claim for payment"
7  must "indicate[] a desire to claim payment from the Medicare program in connection with
8  medical services of a specified nature"), https://www.cms.gov/regulations-and-
9  guidance/guidance/manuals/downloads/clm104c01.pdf.

10       Plaintiffs' further argument that this is merely a mitigation of damages issue to be
11  resolved after discovery is nonsensical. No damages exist to be mitigated, because Plaintiffs
12  suffered no harm if they never submitted a claim for payment as required for payment under the
13  plans. Plaintiffs' assertion that Plaintiff Poe did attempt to "request reconsideration of his less-
14  included component services on an unbundled basis," Opp. at 22, exposes the problem. Even
15  Plaintiff Poe does not allege that he actually submitted a *claim for payment* of unbundled
16  component services. That is a requirement for coverage under the plans. ECF 78-3 at 93–94
17  (discussing claims procedures, including the need to file a claim).

18       ERISA requires that UBH comply with plan terms. Plaintiffs plead no facts showing that
19  it failed to do so with respect to Plaintiffs' bundled denial theory. Count III should be dismissed.

20      **B.**    **The Court Should Dismiss Plaintiffs' Inadequate Notice Claim (Count IV)**
21            **For the Same Reasons It Should Dismiss Count III.**

22       Plaintiffs tack onto their unbundling claim a separate, procedural claim in Count IV,
23  alleging that UBH did not adequately notify them of the basis for their denials. *See* Am. Compl. ¶
24  231 ("UBH deprived the Plaintiffs and the Bundled Denial Class members of any opportunity to
25  object . . . to perfect their claims for benefits for the lesser-included services . . . ."). The Court
26  should dismiss Count IV for the same reasons it should dismiss Count III. *See Condry v.*
27  *UnitedHealth Grp., Inc.*, No. 20-16823, 2021 WL 4225536, at *2 (9th Cir. Sept. 16, 2021)
28  ("[B]oth the full-and-fair-review claim *and* the reimbursement claim are means of obtaining the

same desired end: reimbursement . . . .").

Plaintiffs do not cite a single case supporting the viability of their separate, procedural claim under Count IV. Instead, they merely argue that UBH "[m]iss[ed] the point of Count IV" and that *Condry* is inapposite. Opp. at 23. Plaintiffs' explanation of the "point" of Count IV confirms what UBH argued: it is an alleged "bare procedural violation" that still requires facts showing prejudice, which Plaintiffs fail to allege. *Compare* Mot. at 23–24 (characterizing Count IV as "fail[ing] to disclose" reasons for denials and "fail[ing] to provide any information" on how to perfect claims for component services) *and* Opp. at 23 (characterizing Count IV as "fail[ing] to give Plaintiffs adequate notice" of the basis for denial and "fail[ing] to disclose how Plaintiffs could have perfected their claims for those services"). Because Plaintiffs plead no facts showing prejudice, Count IV must be dismissed.

Additionally, Plaintiffs' effort to distinguish *Condry* assumes their conclusion. Plaintiffs argue that *Condry* differs from this case because the *Condry* plaintiffs' plans did not cover the underlying services, leading the court to conclude that the procedural violation was of no consequence. Opp. at 23. That is exactly the circumstance here: Plaintiffs fail to allege that the unbundled services satisfied requirements for coverage under the plans (e.g., submission of a claim). Therefore, the alleged procedural violation was of no consequence and there is no prejudice. Plaintiffs' Count III should be dismissed, and those same reasons require dismissal of Count IV.

**III.    The Court Should Strike or Dismiss Plaintiffs' Prayer for Claim Reprocessing.**

Under controlling Ninth Circuit law, Plaintiffs are not entitled to claim reprocessing "without a showing that application of the wrong standard could have prejudiced the claimant." *Wit*, 79 F.4th at 1084. As set forth above, Plaintiffs fail to plead facts showing prejudice in the Complaint. In addition, *Wit* confirms that claim reprocessing is not "an available remedy under 29 U.S.C. § 1132(a)(3)," a point Plaintiffs do not dispute. *See id.* at 1086. Thus, if any claim survives, the Court should still dismiss or strike Plaintiffs' prayer for claim reprocessing relief.

Plaintiffs' only response is to argue that neither Rule 12(b)(6) nor Rule 12(f) permit the Court to dismiss a prayer for relief. Not so. Regardless of whether the Court assesses the

propriety of Plaintiffs' request for claims reprocessing under Rule 12(b)(6) or Rule 12(f), cases throughout the Ninth Circuit dismiss prayed-for remedies on the pleadings where they are not available based on the facts alleged. *See, e.g.*, *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010) (construing defendant's 12(f) motion to strike plaintiff's claim for damages as 12(b)(6) motion to dismiss plaintiff's claim for relief); *Beluca Ventures, LLC v. Einride Aktiebolag*, No. 21-cv-06992-WHO, 2022 WL 17252589, at *5 (N.D. Cal. Nov. 28, 2022) ("Because [defendant] contends that punitive damages are unavailable as a matter of law, a motion to dismiss—not strike—is procedurally proper."); *Pollock v. Federal Insurance Co.*, No. 21-cv-09975-JCS, 2022 WL 912893, at *8 (N.D. Cal. Mar. 29, 2022) (finding that defendant's request to strike plaintiffs' punitive damages was more appropriately addressed under Rule 12(b)(6)); *Englert v. Prudential Ins. Co. of Am.*, 186 F. Supp. 3d 1044, 1048 (N.D. Cal. 2016) (granting motion to dismiss portion of plaintiff's § 1132(a)(3) claim seeking a "judgment permanently enjoining Defendants from ever again serving as a fiduciary with respect to the Plan"); *Alberts v. Liberty Life Assurance Co. of Boston*, No. C 14-01587 RS, 2014 WL 2465121, at *4 n.4 (N.D. Cal. June 2, 2014) (noting that Rule 12(b)(6) is the proper vehicle to challenge a claim for relief) (Seeborg, J.); *Brady v. United of Omaha Life Ins. Co.*, 902 F. Supp. 2d 1274, 1279–80 (N.D. Cal. 2012) (granting defendant's motion to strike, among other things, complaint's request for "[a] judgment permanently enjoining United of Omaha from 'ever again serving as a fiduciary with respect to the Plan'").

This Court should strike or dismiss Plaintiffs' prayer for claim reprocessing.

## CONCLUSION

UBH respectfully requests that the Court sustain its motion to dismiss Plaintiff's First Amended Complaint in its entirety, with prejudice.

| | | |
|---|---|---|
| Dated: December 23, 2024 | | **CROWELL & MORING LLP** |

*/s/ Jennifer S. Romano*
Jennifer S. Romano
Andrew Holmer
Jazmine Buckley

*Counsel for Defendant United Behavioral Health*